712 A.2d 902 (1998)
In re D.C., Ca.L. and Ch.L., Juveniles.
No. 97-210.
Supreme Court of Vermont.
May 1, 1998.
*903 Michael Rose, St. Albans, for Appellant/Mother.
Charles S. Martin of Martin & Associates, Barre, for Appellant/Father.
William H. Sorrell, Attorney General, Montpelier, and Barbara Crippen, Assistant Attorney General, Waterbury, for Appellee.
Before DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ.
MORSE, Justice.
Mother and father both appeal an order of the family court granting the petition of the Commissioner of Social and Rehabilitation Services (SRS) to terminate residual parental rights. See 33 V.S.A. §§ 5532, 5540. Mother claims that the court erred in finding a substantial change of material circumstances. Father claims that the court erred in concluding that termination of his residual parental rights was in the best interests of the children. We affirm.
This case involves three children: D.C., Ca.L., and Ch.L., ages twelve, ten, and nine respectively. D.C. is the biological child of mother. The biological father of D.C. has relinquished his parental rights and is not part of this appeal. Ca.L. and Ch.L. are the biological children of mother and father.
SRS initially became involved with the family in 1991, when mother herself reported that she had hit Ch.L., who was then two years old, with a spoon. The report was investigated and substantiated as Ch.L. had a bruise and a welt. SRS next became involved in February 1993, when then seven-year-old D.C. was sexually abused by father's own father. Prior to 1994, mother and father received in-home services from the Vermont Nurses Association, the Intensive Family Based Services program, and the Lund Family Center.
On September 12, 1994, the State filed petitions with the Chittenden Family Court seeking to have the three juveniles adjudicated children in need of care and supervision (CHINS). The petitions were accompanied by two affidavits, one by a police officer, the other by an SRS caseworker, describing incidents that had occurred on September 9, *904 1994, which had resulted in SRS assuming temporary custody of the three children. In his affidavit, the police officer described two incidents in which the children had been outside playing in a road without supervision, noted that mother's apartment appeared to be unclean and unkept and that one child had a dirty face and clothing, and stated that mother was too stressed (to the point of having attempted suicide) to care for her children. The officer's affidavit also stated that father was interested in caring for the children but lacked a residence. The caseworker's affidavit recommended removal of the children from mother's home based on mother's stated inability to care for them and father's lack of residence.
At the merits hearing held on October 10, 1994, mother, father, and the State agreed to a CHINS adjudication. A disposition hearing was held on December 6, 1994, and an order of disposition was issued on January 25, 1995. The family court adopted the disposition report filed by SRS on January 12, 1995, somewhat modified by agreement of the parties, and ordered custody and guardianship of the juveniles to be transferred to SRS, with the residual parental rights remaining with the parents. The report contained a plan of services to assist the family in reuniting in a timely manner. The three facts that the court found supported SRS custody were:
1. That on 9/9/94 [mother] was emotionally unable to adequately care for her 3 children and she refused to continue doing so.
. . . .
[2]. That neither [mother] or [father] have adequate housing to provide a minimal level of care for the 3 children.
[3]. That [father] has a history of explosive anger and that he attempted to assault [mother] and her present partner [M.H.] in August of 1994.
A dispositional review was held on February 26, 1996. At that hearing, SRS changed its goal from reunification of the family to termination of the parents' residual parental rights so that the children could be freed for adoption. SRS claimed that the reasons that originally brought the juveniles into custody had not been resolved. The parents moved for a forensic evaluation and, over SRS's objection, their motion was granted. The evaluation was conducted in March and April 1997 by Dr. William Nash, who recommended termination of parental rights.
An evidentiary hearing commenced on April 8, 1997, and concluded on April 21, 1997. The court issued its findings of fact, conclusions of law, and order on May 19, 1997. The court made eighty-seven findings, concluded that a change in circumstances had occurred in that the parents had not improved their parenting abilities and would not within a reasonable period of time, and ordered the termination of parents' residual parental rights. This appeal followed.
In a proceeding to terminate parental rights "[t]he State must prove by clear and convincing evidence that there has been a material change in circumstances and that the best interest[s] of the child[ren] require[] termination of parental rights and responsibilities." In re J.R., 164 Vt. 267, 270, 668 A.2d 670, 673 (1995). "Individual findings of fact will stand unless clearly erroneous, and conclusions of law will be upheld if supported by the findings." In re A.F., 160 Vt. 175, 178, 624 A.2d 867, 869 (1993). When findings are challenged on appeal, "our role is limited to determining whether they are supported by credible evidence." Id.

I.
First, we address mother's claim that the family court erred in finding a substantial change in material circumstances. A substantial change in material circumstances is most often found when the parent's ability to care properly for the children has stagnated. See id. at 177, 624 A.2d at 869. Where, as here, stagnation is the alleged change in circumstances, "the question is whether the [parent's] improvement substantially conformed with the expectations at the time of the CHINS adjudication and with SRS's case-plan, [and][i]f the expectation of improvement has been met, there is no change in circumstances." In re D.B., 161 Vt. 217, 220, 635 A.2d 1207, 1210 (1993). Accordingly, *905 the burden is on SRS to demonstrate "that there is no reasonable possibility that the causes and conditions which led to the filing of the petition can be remedied and the family restored within a reasonable time." In re R.B., 152 Vt. 415, 421, 566 A.2d 1310, 1313 (1989) (citation and internal quotations omitted).
On appeal, mother makes two arguments. First, she alleges that the three facts justifying SRS custody have been remedied in substantial part, and thus there is no stagnation on which to base a conclusion of changed circumstances. Second, she claims that SRS improperly relied on pre-merits parenting deficiencies as a baseline for assessing a change in circumstances. Relying on In re D.B., she claims that the baseline circumstances should have been those adjudicated in the original CHINS proceeding.
We begin by addressing mother's first argument. We conclude that there was sufficient evidence to support a finding of changed circumstances since the time of the CHINS proceeding, and that, as found by the court in its initial order, mother continues to be emotionally unable to adequately care for her three children. As explicitly stated by the court, "[i]n this case there has been a substantial change in material circumstances in that neither [father] nor [mother] improved their ability to care for the children within a reasonable time after the CHINS adjudication."
Thus, the events occurring after the CHINS adjudication are sufficient to constitute a finding of stagnation with regard to the three facts contained in SRS's disposition report and adopted by the court. Specifically, the court noted the instability in mother's relationship with father between the time of disposition in early 1995 and the eighteen month review in February 1996; her intermittent relationship with [M.H., a former boyfriend,] who assaulted her and dislocated her jaw; her temporary stays in motels and a shelter; her nonparticipation in couples counseling with father and sexual abuse counseling with D.C.; and, her termination of mental health counseling between October 1995 and January 1997. The court concluded:
[T]here is no likelihood that [mother] can resume parental duties towards any of the three children. [Mother] has never demonstrated any ability to meet the children's special needs. [Mother] relates to the children as peers and expects them to meet her needs. [Mother] denied and minimized the domestic abuse which occurred before the children came into custody in her evaluation with Dr. Nash and in her testimony. [Mother] does not acknowledge any responsibility for her pattern of abusive relationships with men. While her functioning may be improved by new medication for her epilepsy, this change, standing alone, does not render her capable of parenting now or in the foreseeable future. Moreover, the costs to the children would be enormous if they were returned to [mother's] care.
Mother does not challenge the substance of the court's specific findings. Rather, she alleges that the court failed to acknowledge her compliance with the SRS case-plan developed at the time of the CHINS adjudication, which she claims was substantial. Nevertheless, this is a matter within the sound discretion of the family court, which must determine the credibility of the witnesses and weigh the evidence. See In re A.F., 160 Vt. at 178, 624 A.2d at 869. The mere fact that there has been some progress in some aspects of a parent's life does not preclude a finding of changed circumstances warranting modification of the disposition order. See id. at 181-82, 624 A.2d at 871. Thus, mother's claims notwithstanding, the lower court's conclusions are supported by its findings and will not be disturbed on appeal.
We observe, however, that mother fares no better with her second argument. The SRS case-plan is outlined in a court-ordered disposition report that also contains background information on the parties, including information concerning mother's childhood and family environment. Presumably, the case-plan was designed in part to address many long-standing issues, and not simply the three enumerated facts supporting SRS custody at that time. In addition, neither mother nor father contested any of *906 the findings in this report which was reviewed and adopted in the disposition order. A more compelling argument may have been made for measuring the change of circumstances from the date of the hearing had the merits been contested or the findings in the disposition report disputed.
Still, the argument that the only relevant evidence is that which was adjudicated at the CHINS disposition is weak. We note that new information regarding pre-merits events may surface and be directly relevant to mother's parenting abilities and the best interests of the children. Once such information is established by clear and convincing evidence in the termination proceeding, it seems counter-intuitive that the court should not acknowledge these events, and SRS's objectives should not reflect them: particularly prior events that have far-reaching consequences, such as the sexual abuse of D.C., and thus cannot be said to exist only in the past.
Finally, mother's assertion that SRS's failure to disclose, at the time of the CHINS proceeding, pre-merits circumstances it later relied on to support termination of her parental rights denied her a fair opportunity to remedy them, is also unpersuasive. If anyone is aware of mother's past parenting skills or lack thereof, it is mother. Had she followed through with the individual and group counseling requested in the SRS case-plan, she would have at least addressed if not resolved some, most, or all of these issues.

II
Next, we consider father's claim that the court erred in concluding that termination of his residual parental rights was in the best interests of his children, Ca.L. and Ch.L. In determining the best interests of the children, the court must consider (1) the children's interaction with the natural parents, foster parents, siblings, and other persons who may significantly affect their lives; (2) the children's adjustment to their home, school and community; (3) the likelihood that the natural parent will be able to resume parental duties within a reasonable period of time; and (4) whether the parent continues to play a constructive role in the children's welfare. See 33 V.S.A. § 5540. "The third criterion is the most critical factor." In re A.F., 160 Vt. at 177, 624 A.2d at 869.
In concluding that father was unable to resume his parental duties within a reasonable time, the court stated the following:
Like [mother, father] denies and minimizes the problems which existed in the home prior to the time the children came into SRS custody. He does not have the ability presently or in the future to meet the special parenting needs of his children. His ability to focus on the children is severely limited. [Father] voluntarily absented himself from [the children's] lives for eight months and did not engage in anger management counseling until the eleventh hour. [Father] himself is responsible for the failure of SRS's case plan for reunification.
Father alleges that the factual basis of the court's conclusion is directly contradicted by its own findings. Specifically, he contends that the timing of his participation in anger management should not negate his ability to meet the children's needs, and that it was irrelevant that he left the state for eight months because a series of family abuse orders prohibited him from seeing his children during that time period anyway. In addition, he claims the court's conclusion was erroneous in light of the following: his reconciliation with mother and his finding mental health services for her; his engagement in anger management counselling; and his reestablishment of a relationship with his children after his eight month absence.
Despite his assertions to the contrary, our review of the record reveals ample support for the court's findings and conclusions. In particular, the court found that father claimed all of his family's past problems were attributable to mother's epilepsy; he attended only ten to twelve anger management sessions over the past two-and-a-half years; he never engaged in couples counseling with mother; he never engaged in sexual abuse counseling with D.C.; he yelled and swore at the social worker in front of the children during visitations, and yelled directives at his children; and, as explained by the psychologist *907 Dr. Nash and included in the court's findings, "[he] has poor impulse control, a low frustration tolerance and could easily go into a rage if he felt his needs are not being met."
The children have been out of the home and residing in foster care continuously for over two-and-a-half years. We hold that the family court's conclusion that father was unable to resume his parental duties within a reasonable time given the children's immediate need for permanence and stability was not in error.
Affirmed.