*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2010-335

JANUARY TERM, 2011

| | |
|---|---|
| In re D.F. and A.F., Juveniles | } APPEALED FROM:<br>}<br>}<br>} Superior Court, Windsor Unit<br>} Family Division<br>}<br>} DOCKET NOS. 107/108-11-08 Wrjv<br><br>Trial Judge: M. Kathleen Manley |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal separately from a family court order terminating their residual parental rights to the minors D.F. and A.F.  Mother contends the court erroneously failed to make adequate findings and conclusions concerning allegedly deficient case management by the Department for Children and Families (DCF).  Father contends: (1) the evidence was insufficient to support the court's finding that his parenting ability had stagnated; (2) the standards for determining stagnation are vague and overbroad; (3) the standards for termination of parental rights are unconstitutional; (4) the State's allegedly improper motives in seeking a termination of parental rights is an abuse of process; (5) the State's adoption statutes are unconstitutional; (6) the court improperly failed to address father's claim of retaliation; and (6) the court violated father's constitutional rights in denying his request for funds to obtain an independent psychological evaluation.  We affirm.

D.F. and A.F. came into DCF custody in November 2008.  D.F. was three days old and A.F. was then five years old.  Hospital personnel had observed that mother failed to respond to or care for the infant.  On visits to the hospital with father, A.F. was observed by hospital staff to be covered with dirt and dried feces, and wearing a diaper full of feces and urine.  The staff fed her and bathed her and washed her clothes.  A.F. spent long hours at the hospital, including until after one o'clock in the morning on one occasion, which concerned the hospital staff.  A home visit revealed an overpowering stench of cat feces and urine and congealed food, and clutter so thick that it was unsafe.  The parties stipulated to an adjudication of children in need of care or supervision (CHINS) and the children were placed in foster care, where they have since remained.

Mother and father agreed to a disposition plan for reunification conditioned upon an array of services, including mental health evaluations and follow up recommendations, parenting classes, and the execution of releases for service providers to communicate with DCF.  In addition, father was asked to participate in anger management and domestic violence programs, and mother was asked to participate in psychiatric counseling.  Based on the parents' minimal participation in services or progress under the plan, DCF altered the goal to termination of parental rights (TPR) and filed TPR petitions in May 2009.  A substantial delay ensued, during which time DCF continued to offer services to the parents and encouraged them to participate.

A hearing on the petitions was held over the course of several days in March 2010. The court subsequently issued a written ruling setting forth extensive findings and conclusions. The court found, in summary, that both parents had failed to participate in a substantial portion of the recommended services, and that both had revoked the releases allowing service providers to communicate with DCF. Furthermore, over the course of eighteen months of supervised visits and instruction by a parent educator, mother had failed to develop minimal child care skills. She had declined to follow through with referrals to psychiatrists or to participate in mental health counseling, and she continued to have substantial untreated mental health issues. The court thus found that mother had developed no ability to adequately and safely parent the infant and no insight into the effect of her angry outbursts and neglect on the children. In addition, issues of unsafe and unsanitary living conditions remained.

Father's supervised visits with A.F. had led to substantial distress in the child, an investigation into suspected child abuse, and a disorderly conduct charge resulting from a confrontation with a DCF social worker to which father ultimately pled no contest. Father failed to participate in domestic violence counseling or to complete anger management counseling, although it was a requirement of the case plan and a condition of his probation for the disorderly conduct conviction. This led to a suspension of father's supervised visits in early 2009, and ultimately a protective order authorizing the resumption of visits conditioned upon his participation in a domestic violence program, which he failed to undertake. Father ultimately declined to engage with the parent educator, and terminated her visits.

A.F. was diagnosed with post-traumatic stress disorder and began regular counseling while in foster care. Although frequent supervised visits with mother were part of the original plan, A.F. became extremely distressed during the visits, exhibiting odd and often sexualized behaviors. Upon the recommendation of A.F.'s therapist, the frequency of the visits decreased, and A.F.'s anxieties lessened. She has since made gains in school and was happy living with her foster parents and D.F, with whom she had formed close attachments. D.F. had also exhibited stress during parental visits but improved when the visits decreased in frequency, and she appeared to have formed attachments with her foster parents and A.F.

Based on the foregoing, the trial court found that each parent's failure or refusal to engage in an array of services, and mother's failure to make any significant progress in developing basic parenting skills, supported a finding of stagnation. Applying the best interests of the child criteria, the court found that no strong relationships had developed between the parents and either child, that neither parent was any closer to being able to provide a safe and stable home for the children than when they came into DCF custody, and that neither could resume parental rights and responsibilities within a reasonable period of time. Accordingly, the court granted the petition to terminate without limitation as to adoption. These appeals followed.

Mother challenges none of the trial court's findings summarized above. Rather, she contends the trial court failed to make required findings concerning DCF's alleged deficient case management. The claim is unpersuasive. The trial court is not required to make specific findings as to whether DCF made reasonable efforts to assist a parent, although such findings may be relevant to determining whether the State has shown that a parent is unable to resume parental responsibilities within a reasonable period of time. In re J.T., 166 Vt. 173, 180 (1997). The record here discloses that the children came into DCF custody in November 2008, and that mother was offered an extensive array of services from that time until the termination hearing, some sixteen months later. Mother's claim of deficiency focuses exclusively on the first seven months of that period, from November 2008 to May 2009, and the efforts of the DCF social worker assigned to the case at the time. The social worker testified that she made several initial

2

home visits, drafted the first disposition report and case plan, and regularly visited the parents in their home along with the parent educator at least twice a month, until father terminated the visits. The social worker also regularly transported both children to their supervised parental visits several times a week. Thus, the record does not support mother's claim that the social worker's efforts were fundamentally inadequate.

Mother contends, nevertheless, that the social worker was deficient in several specific respects, including her failure to contact the parents' attorney to obtain the release of records that the parents had rescinded, to contact mother's doctors concerning her medications, to speak with A.F.'s former daycare provider, and to assemble a treatment team. Mother does not claim or demonstrate, however, that her fundamental inability to assume parental responsibilities within a reasonable time was somehow due to these alleged deficiencies or to circumstances beyond her control. Moreover the trial court here specifically found that any delay in providing the full measure of support during this period was due principally to choices made by the parents, and that any deficiencies were rectified by May 2009, when a different social worker (who had worked with the parents previously) assumed management of the case. Mother does not challenge these findings, or contend that DCF's efforts over the ensuing nine months were inadequate in any respect. Accordingly, we find no merit to the claim, and no basis to disturb the judgment.

Father raises a number of claims. He contends the evidence was inadequate to show that his parenting abilities had stagnated sufficiently to demonstrate a change of circumstances. See In re D.C., 168 Vt. 1, 4 (1998) (in order to terminate parental rights, State must prove at the threshold that there has been a material change of circumstances, which is most often found when parent's ability to care properly for children has stagnated). Our review on appeal is limited to determining whether the trial court's factual findings are supported by credible evidence, and whether the findings support its conclusions. Id.

Father claims that the trial court could not find stagnation because he was not afforded a reasonable opportunity to care for the children in the first instance. The record, however, shows that father's supervised visits were limited and ultimately terminated based on his own threatening and inappropriate behavior toward both the children and the visitation supervisors, and there was ample record evidence to support these findings. Any lack of contact, therefore, was due solely to his own behavior, not to factors "beyond his control." In re K.F., 2004 VT 40, ¶ 12, 176 Vt. 636 (mem.) (holding that father's lack of parent-child contact was attributable to his own criminal behavior and non-participation in programming and not to factors beyond his control); In re A.D.T., 174 Vt. 369, 376 (2002) (holding that trial court properly relied on mother's lack of contact with children where visitation was denied due to her own conduct).

Father also challenges as unconstitutional several TPR provisions, arguing that the standards for finding a substantial change of circumstances are "vague, overbroad, and ultimately, self-serving"; that the statutory factors for determining a child's best interests are "vague, ambiguous, overbroad and subject to arbitrary and capricious interpretation"; and that the Vermont statutes providing for confidentiality of adoption proceedings violate his First Amendment rights. The claims are conclusory, find no support in the authorities cited, and require no extended discussion to reject as lacking in merit.

Father further claims that the TPR petition in this case was an abuse of process because the State's underlying motive was to obtain federal funds for children freed for adoption. There is a presumption that government officials act honestly and impartially in their official capacities, and the burden of proof is on the party claiming otherwise. Brody v. Barasch, 155 Vt. 103, 109-

3

10 (1990). Father has adduced no evidence to support his allegation. Accordingly, we find no merit to the claim.

In a similar vein, father contends the trial court erred in failing to make findings concerning a claim that DCF filed the TPR petition in retaliation for father's providing information that led to the arrest and conviction of the brother of a DCF supervisor. The only evidence adduced at trial in this regard was father's vague testimony that the individual in question told father that he had a relative who worked for DCF who could assist him. Findings are required to address only those facts "essential to the disposition." New England P'ship v. Rutland City Sch. Dist., 173 Vt. 69, 74 (2001). Father adduced no credible evidence to support his allegation of "retaliation," and we find no error in the court's failure to address the issue.

Finally, father contends the court violated his constitutional rights in denying a motion for funds to obtain an independent psychological evaluation of A.F. Father claimed in the motion that he was indigent and required $10,000 to hire an expert psychologist. At the hearing on the motion, he asserted that the independent evaluation was necessary to rebut the child's therapist, who had filed reports alleging that father sexually abused the child. Although the basis of father's claimed entitlement to funding is unclear, we find no error here based on the trial court's clear and explicit ruling that the therapist's testimony did not support a finding that father had sexually or physically abused A.F., and the allegation played no part in the court's decision. Accordingly, the court's denial of the motion for funds was harmless, and provides no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Denise R. Johnson, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

4