*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-227

SEPTEMBER TERM, 2015

| | |
|---|---|
| In re A.W., T.W., and D.W., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 78/79/80-8-13 Bnjv |

Trial Judge: William D. Cohen

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights with respect to three of her children. We affirm.

Child protection agencies in four states—Vermont, Massachusetts, Florida, and New York—have been involved with mother and her family since at least 2010. Mother's two older children, who are not subjects of this proceeding, were taken into state custody in Massachusetts in 2012. The three children that are the subject of the instant termination proceeding, D.W., T.W., and A.W., were born in in February 2011, June 2012, and August 2013, respectively.

The Department for Children and Families (DCF) opened a case in 2010 concerning mother's two older children. Areas of concern included mother's relationship with a convicted sex offender, as well as her mental health problems, poor anger management, and inadequate parenting skills. This effort was closed out in 2011 when the family moved to Florida. During the next few years, the family lived in Florida, Vermont, and Massachusetts. In 2012, mother left D.W., and then T.W., to be cared for by two different relatives. She saw the children infrequently during the following year.

Mother moved back to Vermont during the winter or early spring of 2013, at which time DCF opened a case to assist her with services. The case was closed in May 2013 because mother was planning to transfer permanent guardianship of D.W. and T.W. to the relatives with whom they had been living. She changed her mind, however, and in August 2013 DCF filed petitions alleging that the two children, as well as newborn A.W., were in need of care or supervision (CHINS). DCF's concerns included mother's mental health, her refusal to take medication, her unstable housing, domestic violence between the parents, and the history of parental neglect documented in other states. The day after DCF filed the CHINS petitions, the parties stipulated to, and the family division of the superior court ordered, conditional custody of D.W. and T.W. to the relatives with whom they had been living. One week later, the court transferred custody of A.W. to DCF, and the infant was placed in foster care.

A two-day contested merits hearing was held in January 2014, after which the court adjudicated all three children CHINS. At the March 6, 2014 disposition hearing, the parties agreed with DCF's case plan for each child. With respect to D.W. and T.W., the disposition report recommended concurrent goals of reunification with mother and the father or permanent guardianship with relatives.

With respect to A.W., the report recommended reunification with mother and the father. The court accepted the plan—although it ordered a concurrent goal of permanent guardianship with respect to A.W.—and continued the custody orders already in place. The case plan called for mother, among other things: (1) to address her mental health by following through with individual therapy appointments and taking medication prescribed to her; (2) to complete a mental health evaluation and provide a copy of the evaluation to DCF within two months to assist the Department in developing safety plans for the children and adding needed services; (3) to obtain and maintain safe housing within three months; (4) to demonstrate an understanding of child development and apply that knowledge to the children's needs; (5) to engage in scheduled visitations and parenting classes; (6) to work with the recommended service providers; and (7) to attend all medical appointments and follow doctor recommendations.

On October 31, 2014, DCF filed petitions to terminate the parents' rights with respect to each of the three children. Two weeks later, representatives of the three children filed similar petitions on behalf of the children. A contested termination hearing was held on March 5 and 6, 2015. The father conceded the merits of the petitions and voluntarily terminated his parental rights conditioned upon the court granting the petitions with respect to mother. On May 21, 2015, the family court granted the petitions after concluding that mother's capacity to parent the children had stagnated and that termination of her parental rights was in the children's best interests. Mother appeals from the court's decision. DCF opposes the appeal, and the juveniles' attorney has filed a letter with this Court indicating that the juveniles agree with DCF that the family court's termination decision should be affirmed.

On appeal, mother first argues that the family court's finding of stagnation was improperly measured against generic case plan goals lacking any connection to her individualized situation or the care of her children. According to mother, the court failed to identify any material and substantial stagnation that had occurred since its latest disposition order. Mother contends that, without more specific family court findings, this Court is left to speculate as to what evidence from what time period concerning what services were relied upon to show stagnation. In mother's view, the lack of findings suggests that the family court's decision was based on implicit presumptions and biases concerning persons with mental disabilities—namely, that generic therapy not geared towards a person's particular mental disabilities is sufficient to improve a person's capacity to parent, and that persons with mental health limitations who reject unknown services are at fault for neglecting their mental health.

Upon review of the record, we conclude that there is ample evidence to support the family court's finding of changed circumstances based on stagnation in mother's ability to care for her children. The family court must conduct a two-step analysis in considering termination of parental rights beyond initial disposition. See 33 V.S.A. § 5113(b) (providing that party may modify order on grounds "that a change in circumstances requires such action to serve the best interests of the child.") Before addressing the statutory best-interest criteria contained in 33 V.S.A. § 5114(a), the court must determine whether the petitioning party has demonstrated by clear and convincing evidence that there has been a material and substantial change of circumstances, which "is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated." In re H.A., 153 Vt. 504, 515 (1990). "The mere fact that there has been some progress in some aspects of a parent's life does not preclude a finding of changed circumstances warranting modification of the disposition order." In re D.C., 168 Vt. 1, 5-6 (1998). When stagnation is the alleged change in circumstances, the court must consider whether the parent's behavior "substantially conformed with the expectations at the time of the CHINS adjudication and with [DCF]'s case plan." Id. at 4 (quotation omitted).

2

Here DCF asked the family court to modify the disposition order and terminate parental rights with respect to the three children. Although the court had issued two post-disposition review orders since the original disposition order, the first one simply kept the original order in effect without modification and the second one did not actually contain an order at all. Thus, it was plain to the court and all of the parties that the court was being asked to modify the original disposition order.

The court's findings indicate that it took into account mother's conduct from the time of the original order until shortly before the termination hearing. The court concluded that mother's capacity to meet her children's needs had stagnated if not regressed. According to the court, successive post-disposition reviews had demonstrated that mother had not met some of the critical case plan goals aimed at addressing her instability and anger-management issues. The court found that while mother eventually obtained the required mental-health evaluation shortly before the termination hearing and initially attended therapy sessions, her attendance at the sessions was infrequent at least by the summer of 2014, and she had ceased all medications and therapy by November of that year. The court found that instead of taking her medications and engaging in therapy aimed at helping her control her anger, mother became confrontational, aggressive, and verbally abusive toward caseworkers, family members, and others, as evidenced by multiple police reports and charges. The court found it particularly relevant that "her vicious verbal outbursts frequently occur[red] in front of her children," and that her strained relationships with the custodians of D.W. and T.W. prevented shared parenting meetings. The court also found that mother was homeless and "couch-surfing" for many months, although she claimed to have recently found an apartment. While mother completed parenting classes as directed, the court found that she had shown no desire or ability to put into practice what she was taught in those classes. The court further found that, while visiting D.W. and T.W., mother showed poor judgment and disrespect for schedules and communication requirements and responded to feedback with hostility. Due to her frustration and anger, she alienated various service providers, halted therapy sessions, and eventually refused to communicate with her DCF case worker. The court also found that mother visited the children inconsistently, not seeing them at all for five months between September 2014 and February 2015. When she did see them, she frequently had loud and angry interactions with service providers in front of the children. These findings, although lacking in detail, demonstrate that mother failed to satisfy critical case plan goals aimed at addressing her mental-health problems and inability to control her anger, which were heavily contributing factors in her losing her children to state custody in the first place.

The court's stagnation determination does not appear to be based on biases and presumptions concerning mental illness, as mother asserts, but rather on mother's unwillingness or inability: (1) to address her mental health problems by participating meaningfully in therapy and taking prescribed medications; (2) to find and maintain safe housing; (3) to visit her children as scheduled; and (4) to apply learned parenting skills in interacting with the children during visits. Mother complains that the court failed to connect her verbal outbursts and anger-management problems with her ability to parent, but the court's emphasis on the fact that the verbal outbursts were frequently in front of the children indicates otherwise. In any event, we agree with the State that the negative impact on young children resulting from such behavior is self-evident. We do not accept mother's contention that such an assumption translates into a general presumption that a person with long-term mental disabilities is unfit to parent. The bottom line is that mother agreed to work towards goals critical to her addressing the problems that resulted in her children being taken into state custody, but did not satisfactorily meet those goals. In short, the record fully supports the court's finding of stagnation, and thus changed circumstances.

Mother also argues that the court's findings do not support its conclusion that she would be unable to resume her parental duties within a reasonable period of time from the perspective of the children. According to mother, the court's findings concern the condition of her mental disabilities and not any conduct on her part with an immediate connection to her parenting abilities. Mother asserts that, in effect, the court presumed that she was unfit to care for her children because she is mentally ill. Mother further asserts that DCF's generic case plan goals failed to address her specific needs and may have even exacerbated her disabilities. Mother criticizes DCF for not providing her with a specific treatment, Dialectical Behavior Therapy (DBT), recommended by the clinician who eventually evaluated her.

We find no basis in these arguments to disturb the family court's termination decision. D.W. was approximately two years old, and T.W. approximately two months old when mother left them with relatives. A.W. was taken into state custody and placed in foster care as a newborn infant. Hence, it was imperative for mother to immediately address her mental-health problems and other issues that resulted in her being unable to care for her children. Unfortunately, she was unable or unwilling to do so. Although the case plan called for mother to provide DCF with a copy of a mental-health evaluation within two months of disposition, it was nearly eighteen months, shortly before the termination hearing, before the evaluation was finally completed. At that point, it was too late to commence the DBT therapy, which would have taken at least another year with uncertain results. Mother's delay in obtaining the required evaluation, as well as her failure to follow through with therapy and take needed medications, resulted in her making little progress at the time of the termination hearing in addressing the issues that had led to her children being placed in state custody. The record supports the family court's determination that termination of mother's parental rights is in the children's best interests because mother has not addressed her ongoing anger-management issues, has not played a constructive role in the children's lives, has "displayed a forceful unwillingness to learn and improve her parenting skills," has placed the children "at constant risk of emotional harm" with her frequent angry and emotional outbursts, and "has not shown herself capable of providing a home for the children free of domestic violence."

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice