*369 Reiber, C.J.,
¶ 24. dissenting. The trial court acted within its discretion in concluding that there had been a change of circumstances, and we should affirm its judgment. As the trial court found, the children were taken into state custody based on parents’ substance use and their resulting inability to parent. Throughout the eighteen months leading up to the termination hearing, father continued to use substances. Father does not dispute this finding. The court reasonably concluded that father’s ongoing substance use, coupled with his inability to acknowledge and address this issue, demonstrated a failure to comply with the goals of the case plan and established that father had stagnated in his ability to resume parenting.
¶ 25. As the trial court recognized, there must be a “change in circumstances” before the court may modify a disposition order. 33 V.S.A. § 5113(b) (stating that court “may amend, modify, set aside, or vacate an order on the grounds that a change in circumstances requires such action to serve the best interests of the child”). “A substantial change in material circumstances is most often found when the parent’s ability to care properly for the children has stagnated.” In re D.C., 168 Vt. 1, 4, 712 A.2d 902, 904-05 (1998). “The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention.” In re D.M., 2004 VT 41, ¶ 7, 176 Vt. 639, 852 A.2d 588 (mem.); see also In re D.C., 168 Vt. at 4, 712 A.2d at 904-05 (“[T]he question is whether the [parent’s] improvement substantially conformed with the expectations at the time of the CHINS adjudication and with [DCFJ’s case-plan.” (quotation omitted)). We have consistently held that the “failure to meet expectations in the case plan can constitute changed circumstances for modification of a disposition order.” In re A.G., 2004 VT 125, ¶ 23, 178 Vt. 7, 868 A.2d 692.
¶ 26. “The decision of whether a substantial change of circumstances has occurred is a matter within the sound discretion of the family court.” Id. ¶ 19 (quotation omitted). On review, we must uphold the court’s findings unless clearly erroneous, and its conclusions where supported by the findings. Id. ¶ 17. This Court’s role “is not to second-guess the family court or to reweigh the *370 evidence, but rather to determine whether the court abused its discretion.” In re S.B., 174 Vt. 427, 429, 800 A.2d 476, 479 (2002) (mem.).
¶ 27. There was no abuse of discretion here. The trial court’s decision rests squarely on father’s failure to make progress in ameliorating the conditions that led to state intervention and his failure to meet the expectations in the case plan. The record shows that parents have long struggled with substance use. A conditional care order (CCO) was issued in 2012 because of concerns about parents’ substance use. The CCO required parents to be substance-free. Parents were successful with the CCO and it was discharged in May 2013. The Department for Children and Families (DCF) maintained an open case, however, and it had renewed concerns in the fall of 2013 based, among other things, on father’s admission to using alcohol and marijuana. The children were taken into emergency custody in February 2014, and in April 2014, father admitted the children were “in need of care and supervision due to . . . parents’ substance use and how it interferes with parenting of the children.”
¶ 28. The May 2014 case plan was developed with this background in mind. The plan had concurrent goals of reunification with parents or adoption, and it emphasized that due to parents’ extensive substance use, it was important for parents to maintain sobriety and make sobriety a priority.[6] DCF recommended ongoing DCF custody of the children to give parents the time they needed to maintain sobriety and put other things in place, such as housing, mental health treatment, parent education, and financial stability. To this end, the case plan directed father, among other things, to sign all requested release of information forms in order to gather comprehensive information, as needed, continue all substance abuse treatment and follow all recommendations, and *371 provide DCF with regular urine screens. Father was also cautioned to refrain from illegal activity. Father was supposed to comply with the case plan requirements by November 2014. DCF moved to terminate parents’ rights in late October 2014, but the termination hearing was not held until August 2015, ten months later.
¶ 29. Following a two-day evidentiary hearing, the court concluded that father had stagnated in his ability to resume parenting the children, one of whom had extensive needs due to spina bifida. In reaching its conclusion, the trial court recognized that father had made positive progress in addressing many of the case plan goals. Nonetheless, it found that the substance abuse that formed the basis of the CHINS finding remained inadequately addressed. The court specifically recognized that while some relapses could be expected, the evidence showed continued use over a long period of time.[7]
¶ 30. The evidence also indicated that father was not honest about his problems with substance abuse and, thus, not willing to truly address the issue. The court noted that when father was asked about positive drug tests, he responded a number of times, not by saying that he had used those drugs, but simply replying “[tjhat’s what the test showed.” Father also testified that he smoked marijuana only one or two times in the prior year when the evidence showed that there was THC in his system for six months between November 2014 and April 2015. Finally, with respect to substance use, the court did not credit father’s testimony that he found the marijuana that he was smoking on the sidewalk. The court explained that the hearing was being held *372 because the substance use issues, which led to the children coming into custody, needed to be addressed. And a big part of that was being able to discuss and work through the substance abuse issues, issues that by father’s own admission, he needed to address. The court therefore had no confidence that father had adequately addressed the single issue that led to the children coming into custody. The court thus concluded that father had stagnated in his ability to parent despite the other very significant gains that he had made.
¶ 31. All of these findings are supported by the evidence, and they support the court’s conclusion. Father acknowledged that the principal reason that the children were removed from his and the mother’s custody was the parents’ substance abuse. He testified to spending a week at the Brattleboro Retreat in February 2014, and to enrolling in a program that supplied him with Suboxone and that required him to be subjected to regular random drug testing. Father further testified that, because of the difficulty of getting to that program every day, beginning in July 2014 he entered into another program in which drug testing was done on a weekly, nonrandom basis.
¶ 32. The State then examined father about his weekly treatment notes, including drug tests results, between July 2014 and July 2015. Father provided these documents to the State in connection with the hearing and he stipulated to their admissibility. Father acknowledged testing positive for OxyContin in August and September 2014, benzodiazepine and opiates in September 2014, marijuana on more than a dozen occasions from November 2014 through April 2015, and amphetamines in May and June 2015. Despite these positive test results for various drugs, father testified that he had resolved his issues with drug use. He stated that he had found the marijuana on the sidewalk and had smoked only a few puffs “once or twice” at night to help him sleep, but progress notes from his weekly test results indicated that he was smoking “regularly” at times. The State also questioned father about progress notes from November 2014, which indicated that father had talked in detail about a friend who had recently overdosed in father’s home. Although the notes indicate that father talked “about having needle in arm when saw friend turning blue,” father denied that he was using intravenous drugs at the time or that his friend had taken drugs in his home.
¶ 33. The State also elicited testimony from the DCF caseworker who stated that, although father was seeking substance *373 abuse treatment, he had not signed releases allowing her access to his substance abuse records. The caseworker opined that she continued to have “great concern” about father’s substance use because he was adamantly denying substance use when the records showed otherwise. Her major concern was that his lying about being clean “puts him in a pre-contemplative state of substance recovery, which is not a place where we want parents to be when we’re talking about reunification,” and makes it difficult to “assess safety in [his] home around substance use when he’s not being honest about what that use looks like.”[8] There is ample evidence to support the court’s conclusion that father failed to adequately address his substance use and failed to meet the goals of the case plan.
¶ 34. Father does not contest his drug use on appeal. He acknowledges that “some drug screen results revealed the presence of drug metabolites.” He admitted to using certain drugs. He does not express any confusion on appeal about the treatment notes themselves, including the drug screen results, and he raised no objection to the meaning or the reliability of these documents below.[9] Rather than contesting the fact of his continued substance use, father’s argument on appeal is that the trial court failed to specifically find how many drugs he took, how often, and the extent to which he was impaired by such use, and it failed to describe how his ongoing substance use impaired his ability to parent. The trial court was not required to make such findings. The court had already determined that father’s substance abuse impaired his ability to parent at the CHINS stage. That is why the children were removed from parents’ custody and placed in DCF custody and that is why a case plan was adopted that *374 required father to make sobriety a priority. The evidence is undisputed that father and the mother had a longstanding history of substance abuse that impacted their ability to parent their children and resulted in the children being removed from their care. Father expressly acknowledged as much at the termination hearing. He cannot now argue, given this history, that his continued use of a variety of drugs over the course of a year after the children were placed in DCF is not a material change of circumstances based on stagnation.
¶ 35. Father also argues that he satisfied all of the goals set forth in the disposition case plan and remedied the circumstances that led to his children being taken into state custody, and thus, the court could not find stagnation. This is plainly incorrect. The case plan required the parents to continue all substance abuse treatment, follow all recommendations, provide regular urine screens, and sign all requested releases. Although father has continued substance abuse treatment and provided weekly urine screens, he has not signed all requested releases and, more importantly, has denied and minimized his continual use of drugs, despite the fact that substance abuse was the reason his children were removed from his and the mother’s care. The disposition case plan goals also include that the parents demonstrate an ability to put the children’s needs before their own, that they acknowledge how their choices put their children at risk, and that they not be involved in any illegal activity. Father’s continued drug use, under the circumstances of this case, is not compatible with those goals.
¶ 36. The majority decision appears to rest on the fact that no witness testified whether the test results in the reports represented a failure to meet the goals of the case plan, and that the State failed to provide evidence connecting father’s use of drugs to his progress in meeting the case plan goals or to his parenting. Ante, ¶¶ 19, 21. The majority indicates that to prove stagnation it is not enough to show that a parent continues to use drugs throughout the period that a child is in DCF custody and denies or minimizes such use.[10] Instead, the State must secure a pharmacologist, a substance abuse clinician, or a social worker *375 “upon proper foundation and qualification in a given case” to testify that stagnation exists. Ante, ¶ 21. Neither our case law nor the statutes require such evidence. The question of whether father stagnated in his ability to parent by failing to comply with the goals of the case plan is a legal conclusion that rests within the trial court’s sound discretion based on its assessment of the weight of the evidence. In re A.G., 2004 VT 125, ¶ 19.
¶ 37. The majority states that its holding is narrow. Ante, ¶ 23. It is hard to see how this is so. It has imposed a new requirement on the trial court. The court can no longer conclude that the evidence shows a failure to comply with the case plan unless someone testifies to that effect at trial. The court’s holding will logically extend to the best-interest factors, particularly, the most important factor of whether a parent will be able to resume parenting within a reasonable period of time as these two legal conclusions are closely connected. See, e.g., In re A.W., 164 Vt. 412, 416, 670 A.2d 1265, 1267 (1995) (explaining that change in circumstances may be established by proof that parents’ ability to care for child has “stagnated to the point that they are unable to resume parental duties within a reasonable period of time”).
¶ 38. The only question before us in this appeal is “whether there was a basis in the record upon which the court could reach the conclusion it did” and not “whether there was a basis upon which the court might have reached a different conclusion.” Griffis v. Cedar Hill Health Care Corp., 2008 VT 125, ¶ 15, 185 Vt. 74, 967 A.2d 1141. The trial court’s decision here is supported by the record, and consistent with the law, and it should be affirmed. I therefore dissent.

 The majority presumes that the case plan was concerned only with opiate use. See ante, ¶ 21. The trial court found otherwise, and its finding is supported by the record. There is nothing in the case plan that indicates father needed only to refrain from using opiates, or that limits father’s substance use issues to opiates. To the contrary, the record indicates that DCF sought court involvement in the family’s case based in part on concerns about father’s alcohol and marijuana use. The case plan emphasizes sobriety, that is, a life free of any substance use. We must construe the record in support of the court’s decision, not contrary to it as the majority does here. See, e.g., Cloutier v. Blowers, 172 Vt. 450, 461, 783 A.2d 961, 970 (2001) (on review, Supreme Court must “construe [findings] so as to support the judgment, if possible” (quotation omitted)).

 The majority has determined that father’s substance use in 2014 is less probative than his use in 2015. Ante, ¶ 16 n.2. It thus discounts the fact that father tested positive twice for OXY in August and September 2014, positive for BZO in August 2014, positive for OPI-3000 in September 2014, and had three positive tests for THC in November and December 2014. Id. This Court should not be assessing the probative value of evidence on appeal. That role is reserved exclusively for the trial court. See In re A.F., 160 Vt. 175, 178, 624 A.2d 867, 869 (1993) (“When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence. We leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence.” (citations omitted)). The court’s finding that father engaged in continued substance use over a long period of time is supported by the record and appears to be unchallenged by father. Because the trial court was considering if father had complied with the expectations at the time of the CHINS decision and with the goals of the case plan, moreover, all of this behavior was relevant.

 Again, the majority discounts this evidence, indicating that this testimony is “as close as the State got to explaining the significance of any continued drug use by father with respect to his ability to parent.” Ante, ¶ 19 n.3. Assuming that such testimony was required, the majority does not indicate why the cited testimony does not suffice. The State was required to prove that father had not “substantially conformed with the expectations at the time of the CHINS adjudication and with [DCF]’s case-plan,” In re D.C., 168 Vt. at 4, 712 A.2d at 904-05, and this evidence certainly speaks to that question. The case plan called for father to maintain sobriety, and the trial court reasonably could conclude that that essential goal had not been met.

 To the extent that father denied using the drugs reflected in the urine screens at the final hearing, that denial was a matter for the court to consider in evaluating the weight of the evidence. The trial court did not find father credible.

 The majority has reframed the question on appeal, and made an appellate finding that father’s “use of an undetermined amount of marijuana throughout part of the period preceding the termination hearing” is insufficient to show stagnation. Ante, ¶ 23. It cites two of the statutory best-interest factors in support of this *375 conclusion. The trial court did not base its decision on such a finding. It found that father engaged in continued substance use over a long period of time, and that he was not honest about his use and, thus, not able to address and work through his substance use issues. These findings are supported by the record, and they reflect the trial court’s assessment of father’s credibility and the weight of the evidence. As to the children’s best interests, which are not at issue absent a finding of stagnation, the trial court concluded that the statutory best-interest factors supported termination of father’s rights. The majority ignores the trial court’s actual findings and conclusions in reaching its decision.