VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     24-AP-307

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2025

| | |
|---|---|
| In re F.R. & A.R., Juveniles<br>(B.B., Father\* & T.R., Mother\*) | } APPEALED FROM:<br>}<br>} Superior Court, Franklin Unit;<br>} Family Division<br>} CASE NOS. 69-6-20 Frjv & 68-6-20 Frjv<br>Trial Judge: Robert W. Katims |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal termination of their parental rights to twins F.R. and A.R., born in June 2020. On appeal, father argues that the court erred in terminating his rights because he had made significant progress. Mother argues that the evidence does not support the court's determination that her progress had stagnated and that her due-process rights were violated when the court allocated the burden of proof to mother regarding her motion for conditional custody. We affirm.

The court found the following by clear and convincing evidence. When the twins were just a day old, the State filed petitions alleging that they were children in need of care or supervision (CHINS) based on parents' long history with the Department for Children and Families (DCF). Parents' rights to other children had been terminated and there were ongoing concerns around substance abuse and instability in the home. The twins were in the neonatal intensive care unit after birth, both having been exposed to inter-utero drug use. F.R. was born with bilateral club feet and required extensive medical intervention. The treatment program required strict adherence to prevent long-lasting issues and would continue throughout childhood. A.R. had chronic ear infections. The court granted custody to DCF, and they were placed in an anonymous foster home due to father's past violent behavior.

Mother was incarcerated in December 2020. During that time, father spoke to mother on the telephone and made threats against DCF, DCF workers, and the Lund home. These telephone calls were recorded, and the threats included threats to kill DCF workers and start a "civil war." In response, in-person visits were suspended with father and father was ordered to complete a risk assessment and follow recommendations. The assessment concluded that father did not accept responsibility for his threatening behavior and did not show a willingness to change, instead blaming DCF. DCF required father to enter a conduct agreement to continue working with DCF.

In August 2021, after a contested hearing, the court concluded that the twins were CHINS. The court found that at the time of the twins' birth, the twins' older sibling was in DCF custody. Mother had not followed through on the expectations in the sibling's case plan, including absconding from furlough, and failing to engage in mental-health counseling or work with service providers. Father had a history of violating conditions of release and substantiations of child abuse. The resulting disposition order had a goal of reunification by April 2022. Some action steps for mother included following the plan for parent-child contact, engaging with counseling for past trauma and mental health, completing a parenting course, updating her substance-abuse treatment plan and following recommendations, engaging in healthy relationships, attending medical appointments for the children, and maintaining safe and stable housing. Father's steps included not blaming others for his criminal and abusive behavior, following the plan for parent-child contact, following the conduct agreement with DCF, meeting with a domestic-violence specialist, completing parenting class, engaging in mental-health counseling, attending medical appointments, and maintaining safe and stable housing.

Because parents were making some progress by the reunification date, the goal date was moved to July 2022. A trial reunification with parents began in June 2022. DCF provided tremendous support to parents, including reminding parents of appointments and helping with transportation. The trial reunification ended in July 2022 after parents missed an important medical appointment for F.R.—it had been rescheduled once and DCF reminded parents about the importance of the visit—and mother's probation officer received a report that mother was abused by father. In a meeting with her probation officer, mother appeared scared and hesitant; she denied the abuse but the probation officer noticed a bruise mark on her throat that looked like a thumbprint. Father worked with a domestic-violence specialist and attended counseling sessions, however, he failed to acknowledge that he engaged in domestic violence and showed no insight into his wrongful behavior.

A second trial reunification began in November 2022 and failed in March 2023 based on concerns for the children's health, parents' inability to follow medical recommendations and access medical care for the children, and the children's significant behavior changes after visiting with parents. Among other concerns, A.R. developed a serious ear infection for which parents did not seek medical attention. In addition, by March 2023, parents' newborn child was placed in the home with the twins and parents were overwhelmed by caring for all three children.

In April 2023, the State filed petitions to terminate parents' rights. The same month, mother moved for conditional custody of the twins. After a hearing, the court denied the motion, continuing DCF custody. After a hearing on the termination petition, the court determined that there was a change in circumstances due to parents' stagnation. Father failed to address his abusive behavior in a meaningful way. He denied his abusive conduct, minimized his threatening behavior toward DCF, mother, and the twins' older sibling, and continued to act aggressively. In July 2023, father exhibited aggressive behavior towards the twins' older sibling and minimized his behavior. He also failed to comply with the conduct agreement. Parents did not demonstrate an ability to meet the children's medical needs. They did not bring F.R. to required medical appointments and failed to notice or treat a serious ear infection in A.R. In sum, they did not make any real progress toward meeting the goals in the case plan despite extensive support from DCF and two attempts at reunification.

The court examined the statutory factors and concluded that termination was in the children's best interests. The twins had a strong and positive relationship with their foster parents. The twins adjusted positively to foster parents' home, school, and community. The

children were in the same foster home their entire lives, except for the two trial reunification periods. Their foster parents have provided a safe and supportive home and kept the twins current on all medical appointments, including those for F.R.'s club feet. The children were not bonded with mother and father. Parents were not able to resume parenting in a reasonable period of time. They made very little progress towards reunification in over three years. They did not demonstrate an ability to provide safe and nurturing care, failing to address the domestic violence in their relationship and show the ability to meet the children's medical needs. Therefore, the court granted the petition to terminate parents' rights to A.R. and F.R. Mother and father both appeal.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, father argues that the court erred in terminating his rights because he had made significant progress towards the goals of the case plan. Father contends that he completed domestic-violence and parenting programs, attended two anger-management classes, and met with a domestic-violence specialist. Father also asserts that he made progress by achieving financial and housing stability and obtaining substance-abuse treatment.

Father's assertion that he made some progress towards the goals in the case plan by engaging in domestic-violence and parenting programming does not undermine the court's decision regarding stagnation. "The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention." In re D.M., 2004 VT 41, ¶ 7, 176 Vt. 639 (mem.). A parent's attendance at programs is an important part of progress, but a parent must also demonstrate "the improvement contemplated at the time the children were removed from the parent's care." Id.

Here, the court acknowledged that father attended counseling sessions for domestic violence but found that despite the services and programming offered to father, he failed to demonstrate an improvement in his behavior. He exhibited inappropriate behavior in his class to the point that the facilitator had to ask him to calm down. He smashed a car window with a crowbar in July 2023 while his teenage child was inside. He continued to act aggressively and inappropriately towards DCF during meetings. Since entering the conduct agreement with DCF in August 2021, father continuously violated it, including by making derogatory remarks about a case aid and DCF. He denied his abusive conduct and minimized his threatening behavior towards DCF, mother, and the twins' older sibling. In addition to not making improvement on his abusive and violent conduct, father did not show an ability to provide care and support for the twins. He was not attuned to their medical needs and failed to notice or treat A.R.'s serious ear infection. The record supports the court's finding that father's progress stagnated.

Mother also argues that the evidence does not support the court's determination that her progress had stagnated. Mother contends that she worked with DCF, made progress from the time of the initial disposition, and engaged in services. Mother claims that the court's finding of stagnation was impermissibly based on unproven violent conduct by father and isolated

incidents—her incorrect treatment of A.R.'s ear infection and her new baby's loss of one ounce during illness. As to the first claim, the court did not base mother's stagnation on unproven violent conduct by father. Father had documented past abuse, and therefore the case plan required mother to understand the impact that domestic violence had on her children and to provide a healthy and safe environment for them. Mother failed to acknowledge father's abusive behavior, and the court acted appropriately in considering this in its stagnation analysis. Mother minimized father's threats of harm from April 2021, characterizing it as "venting," and claimed father had to smash a car window with the twins' older sibling inside. The court was not punishing mother for father's behavior; rather, it was recognizing that mother's failure to acknowledge father's abusive conduct and her decision to continue residing with father under these circumstances presented a risk to the children.

In addition, the record supports the court's finding that mother remained unable to properly identify and address her children's medical needs.* Mother's assertion that stagnation was based on isolated instances of her failing to identify A.R.'s ear infection and her infant child losing weight is not supported by the record. There was other evidence regarding mother's inability to meet the children's medical needs. The court found that mother showed an inability to provide basic care and support for the twins. F.R. had complex medical needs that would continue throughout childhood and mother rushed through an office visit and did not ensure that F.R. attended a critical medical appointment, despite DCF's reminders. Moreover, the court found, based on the testimony of a DCF worker, that mother was not attuned to the children's medical needs and remained unable to identify the children's health issues. These findings all support the court's conclusion that mother's progress had stagnated.

Mother's second argument revolves around her request for a conditional custody order (CCO). After the first trial reunification ended in July 2022, mother moved for conditional custody of the twins. The court began a hearing on the motion in August 2022 and reconvened in September 2022. After the September hearing, the parties agreed on a plan to reinitiate reunification, and the court interpreted the agreement to include mother's withdrawal of her motion for a CCO. In April 2023, mother again moved for conditional custody after the second trial reunification was unsuccessful. At the hearing, the court placed the burden of proof on mother, and mother did not object. Following the hearing, the court denied the motion. The court explained that mother had not presented a change in circumstances warranting a modification of the existing disposition order concerning the twins, and that in any event, placing the children in the care of their parents through a CCO was not in their best interests.

On appeal, mother argues that the court committed plain error when it placed the burden on her. Plain error is generally limited to criminal cases. See V.R.Cr.P. 52(b) (defining plain errors in criminal proceedings as those "affecting substantial rights"). In juvenile proceedings, arguments not raised below are not preserved for appeal. In re D.C., 157 Vt. 659, 660 (1991)

---

* Mother claims that the court could not consider medical neglect as part of its stagnation analysis because this was not a consideration at the CHINS merits phase. The disposition case plan identified mother's need to partner with the children's medical and developmental providers and ensure their needs were met. Therefore, given this identified goal, it was appropriate for the court to consider mother's ability to manage and meet the children's needs, including their medical needs. See In re D.C., 168 Vt. 1, 6 (1998) (rejecting mother's argument that State may rely solely on circumstances adjudicated in CHINS merits proceeding in assessing change in circumstances).

(mem.). This Court has recognized that in an "exceptional case[]," we can reverse on an unpreserved issue if the error "is so obvious, grave, and serious as to warrant reversal." Id. Mother has not presented any error, let alone such a grave error here. Given that DCF was the legal custodian, and had been since 2020, any change in the existing disposition order to alter custody required a change of circumstances. See 33 V.S.A. § 5113(b). Because mother was the party seeking a change, the court properly placed the burden on her. In any event, mother has not demonstrated how any error in that proceeding ultimately impacted the court's termination decision given that in that proceeding the State held the burden of proof.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice