VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.        23-AP-010

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,   2023

In re M.B., Juvenile        }   APPEALED FROM:
(B.C., Mother\*)              }
                                }   Superior Court, Windham Unit,
                                }   Family Division
                                }   CASE NO. 21-JV-00551
                                     Trial Judge: Jennifer Barrett

In the above-entitled cause, the Clerk will enter:

Mother appeals from the termination of her rights in daughter M.B.  Father voluntarily relinquished his rights.  We affirm the trial court's decision.

M.B. was born in Pennsylvania in February 2018.  After the family moved to New Hampshire, a child-protection case was opened.  In July 2019, to avoid further state intervention, M.B.'s paternal aunt became M.B.'s guardian.  Mother then returned to Pennsylvania.  In September 2019, aunt moved to Vermont with M.B.  After jurisdictional issues arose about the transfer of the guardianship, aunt contacted the Vermont Department for Children and Families (DCF).  In April 2021, DCF filed a petition alleging that M.B. was a child in need of care or supervision (CHINS).  M.B. was placed in DCF custody, and she has remained in aunt's care.  Mother, who continues to live in Pennsylvania, stipulated that M.B. was CHINS.  The case plan sought reunification with mother and required mother to demonstrate her ability to meet M.B.'s needs by, among other things, obtaining safe and stable housing that was free from substance abuse, criminal activity, and violent individuals.  Mother was also required to engage with a mental health provider and follow the provider's recommendations as to certain identified issues, including learning to identify individuals who could pose a risk to M.B.

In June 2021, an Interstate Compact on the Placement of Children (ICPC) home study was requested in Pennsylvania.  The home study did not recommend reunification of M.B. with mother because of mother's living arrangements.  Mother lived with her brother and father.  Both men had criminal histories, and mother had previously accused her father of sexually assaulting her.

In April 2022, DCF moved to terminate mother's rights, and, following a hearing, the court granted its request.  The court convened a separate hearing in December 2022 to make its findings on the record.  The court found that mother stagnated in her ability to parent and that termination of her rights was in M.B.'s best interests.  It explained that mother had been advised

that her living arrangements presented a barrier to reunification but she declined to seek other housing. Notwithstanding her claim that father sexually abused her, mother intended to have her father care for M.B. Mother's brother also had a past adjudication of a sexual nature. The court further found that mother had not visited M.B. in person since 2019 despite offers of funds for transportation and lodging. Her visits with M.B. consisted of thirty-minute video chats once a week, and mother had not requested increased visitation. Mother did not regularly attend pre-visit meetings, which were designed to assist her and demonstrate improvement over the course of the visits. She cancelled approximately one-quarter of her visits with M.B. Mother struggled to engage with M.B. during visits and the level of engagement did not improve over time. Based on these and other findings, the court found that mother stagnated in her ability to care for M.B.

Turning to the statutory best-interest factors, the court concluded that they all supported termination of mother's rights. It found that M.B. did not have a significant relationship with mother beyond a thirty-minute video chat once a week. She had not seen mother in person for a significant part of her life. M.B. had a good relationship with aunt and aunt's adult daughter. M.B. was engaged in her community and well adjusted to her foster home, where her needs were being met. The court found that mother could not assume her parental duties within a reasonable time, noting her refusal to explore alternative housing arrangements, her failure to visit M.B. since 2019, and her failure to avail herself of the services offered by Family Time Coaching. Finally, the court found that mother loved M.B. but she did not play a constructive role in the child's life. She did not visit in person, and the video-chats consisted of parallel play without deeper engagement. The court thus determined that termination of mother's rights was in M.B.'s best interests. This appeal followed.

Mother argues on appeal that the court erred in terminating her rights. She contends that there is no evidence that she is unfit to parent M.B. Mother asserts that the court should not have been concerned about her living situation because she disavowed the sexual assault allegation against her father. She states that she parented M.B. in the past and could do so again. Mother cites evidence that she believes supports her position, such as her employment and her support system in Pennsylvania. She suggests that her rights were terminated "simply because [M.B.] might be better off in another home." In re E.B., 158 Vt. 8, 12 (1992). Mother acknowledges that she has not parented M.B. since June 2019 but contends that she is fit to do so now.

When termination is sought after initial disposition through modification of a prior order, the court must first find "that there has been a substantial change in material circumstances" and second "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.); see also In re D.C., 2012 VT 108, ¶ 22, 193 Vt. 101 (recognizing that Vermont Legislature has chosen to evaluate parental "fitness" using "the best-interests criteria contained in 33 V.S.A. § 5114(a)," which "both directly and indirectly [encompass] the question of parental fitness"). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; "we will affirm its conclusions if they are supported by the findings." In re G.S., 153 Vt. 651, 652 (1990) (mem.).

There was no error here. A substantial change in material circumstances is most often found when "the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re B.W., 162 Vt. 287, 291 (1994) (quotation omitted). "Stagnation may be shown by the passage of time with no improvement in parental capacity to care properly for the child." Id. (quotation omitted). As set forth above, the court found that mother has not seen M.B. in person since 2019. Mother failed to obtain safe housing that would be suitable for her and M.B. She did not sufficiently avail herself of the services being offered during the video

2

visits to show improvement using the pre- and post-visit coaching that was offered. The court's determination that mother had stagnated in her ability to parent is supported by its findings, which are in turn supported by the evidence.

The court did not terminate mother's rights simply because it determined M.B. would be better off in another home, as mother asserts. It considered the statutory best-interest factors and concluded that they all supported termination of mother's rights. For reasons similar to those set forth above, the court concluded that mother would not be able to resume her parental duties within a reasonable time as measured from M.B.'s perspective. See In re B.M., 165 Vt. 331, 336 (1996) (recognizing that most important statutory factor is likelihood that parent can resume parental duties within reasonable period of time). The court made findings with respect to each statutory factor, and its findings are supported by the record. While mother urges us to view the evidence differently, that is not our role. We leave it to the trial court to assess the credibility of witnesses and weigh the evidence. In re A.F., 160 Vt. 175, 178 (1993); see also In re S.B., 174 Vt. 427, 429 (2002) (mem.) ("Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights . . . ."). Mother fails to show any abuse of discretion here.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice