852 A.2d 584 (2004)
2004 VT 40
In re K.F., Juvenile.
No. 03-477.
Supreme Court of Vermont.
April 28, 2004.
*585 Present: DOOLEY, JOHNSON, SKOGLUND and REIBER, JJ., and GIBSON, J. (Ret.), Specially Assigned.

ENTRY ORDER
¶ 1. Father appeals from the family court's order terminating his residual parental rights over K.F. He argues that the court erred by failing to recognize that the Department of Social and Rehabilitation Services bore substantial responsibility for the circumstances alleged to support the termination order. We affirm.
¶ 2. Mother and father, who have never married, are the parents of K.F., born in October 2002. Shortly after K.F.'s birth, father was incarcerated on probation violations related to domestic violence toward mother. In December 2002, K.F. was adjudicated as a child in need of care and supervision. At that time, mother admitted that she did not possess all of the skills necessary to provide appropriate care and supervision to K.F. In December 2002, mother was accepted into the Lund Family Center's Residential Program where she was joined by K.F. for a trial reunification.
¶ 3. In January 2003, the family court held an initial disposition hearing. SRS indicated that it was seeking to assist mother in developing parenting skills so that she could live independently with K.F. SRS noted, however, that mother had demonstrated an inability to incorporate new learning into her care of K.F. and she had shown resistance to the parent education offered at Lund. Given this, and K.F.'s age and fragile stability, SRS explained *586 that it concurrently planned to seek the termination of mother and father's parental rights if significant progress was not made within two months. Father did not object to SRS's case plan. In March 2003, mother was discharged from Lund, and K.F. was placed in emergency foster care. Shortly thereafter, father was released from prison, and he contacted SRS seeking visitation with K.F. The SRS caseworker sent a letter to the court, with a copy provided to father, explaining why she did not support visitation. The caseworker stated that since his release father had been living with mother despite a no-contact order, father had not engaged in any type of parent education services since being incarcerated, and father had seen K.F. on only one occasion. Based on this information, and because SRS was filing a petition for termination of parental rights, the caseworker expressed her belief that contact between father and K.F. was not in K.F.'s best interests. In response to the letter, the family court indicated that there would be no hearing on visitation except on motion.
¶ 4. In April 2003, SRS filed a petition to terminate parental rights. In its petition, SRS stated that over the past six months mother had demonstrated her inability to parent K.F. in a consistently safe and appropriate manner and she continued to struggle with self care. SRS noted that father had been in prison from November 2002 through March 2003, and he had previously been charged with domestic assault, disorderly conduct, and numerous probation violations.
¶ 5. Two months later, at a June 2003 status conference, father's attorney asked the family court to impose visitation with K.F. "today." The court responded that, given its earlier order, father needed to file a motion to establish visitation. Father's attorney then made an oral motion for visitation, and the court stated that the matter could be set for a hearing. Father's attorney responded that he did not see the necessity for a hearing when "we're so close to a termination." It does not appear that the question of visitation was set for a separate hearing. Father returned to jail in June 2003; he remains incarcerated.
¶ 6. In August 2003, mother voluntarily relinquished her residual parental rights. After a hearing, the court terminated father's residual parental rights. The court found that father had not assumed any caretaking responsibilities for K.F. nor provided any financial or parental support after her birth. While in jail, he did not participate in any programming with the Department of Corrections, nor did he contact SRS to inquire about K.F.'s well-being or play any role in her life. When he was released from prison, he failed to keep in consistent contact with K.F.'s caseworker. Shortly after his release, he was charged with numerous violations of an abuse prevention order, and with violating probation, and he returned to jail. The court found that father had seen K.F. only twice since her birth, and that SRS had been unable to set up any consistent contact between father and K.F. due to father's frequent incarceration. The court also noted that father's parental rights had recently been terminated over another child, A.C., due in part to his substantial failure to comply with the requirements of SRS's case plan. Based on its findings, the court concluded that there was no likelihood that K.F. could be reunited with father in the foreseeable future. The court stated that father had demonstrated a pattern of unavailability due to incarceration, criminal behavior, and nonparticipation in Corrections programming, and he had not played a constructive role in K.F.'s life. The court recognized that K.F. had a need for stability, and that she was thriving *587 with her foster parents. The court thus concluded that termination of father's parental rights was in K.F.'s best interests. Father appealed.
¶ 7. On appeal, father asserts that the family court erred by failing to take into account that SRS "in substantial part engineered the circumstances alleged to support termination." Father maintains that SRS failed to shoulder its responsibility to provide services to him, and it denied him visitation with K.F. Under these circumstances, father argues, his lack of contact and his lack of a bond with K.F. cannot be held against him.
¶ 8. When the termination of parental rights is sought, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291, 648 A.2d 652, 654 (1994); 33 V.S.A. § 5532(a). The court must first find that there has been a substantial change in material circumstances; second, the court must find that termination of parental rights is in the child's best interests. In re B.W., 162 Vt. at 291, 648 A.2d at 654-55; 33 V.S.A. § 5532(a). We will uphold the trial court's findings of fact unless they are clearly erroneous, and we will uphold the court's conclusions of law if supported by the findings. In re D.C., 168 Vt. 1, 4, 712 A.2d 902, 904 (1998).
¶ 9. In this case, the family court did not explicitly find that there had been a material change in circumstances. Neither party argues that this requirement was not met, however, and it is evident from the record that a material change in circumstances had occurred since the initial disposition order. See In re H.A., 153 Vt. 504, 515, 572 A.2d 884, 890 (1990) ("the changed circumstances test is met when the findings in the case are replete with facts sufficient to meet the required standard") (internal quotation marks and citation omitted). Since that time, mother, with whom reunification had been contemplated, had voluntarily relinquished her residual parental rights. Additionally, because father was incarcerated at the time of the initial disposition hearing, SRS did not contemplate his reunification with K.F. Father did not object to SRS's case plan, nor did he appeal the family court's initial disposition order. After father was released from prison, he attended a case plan meeting where he was informed by an SRS caseworker of minimal expectations that would facilitate his reunification with K.F., i.e., law-abiding behavior and maintaining contact with SRS. As the family court found, although father appeared to understand these requirements, he failed to meet them. Thus, the record reflects that a material change in circumstances with respect to the father had occurred since the initial disposition order.
¶ 10. When there has been a substantial change in material circumstances, the court must next assess whether termination of parental rights is in a child's best interests. To determine the best interests of the child, the court must consider four statutory factors. See 33 V.S.A. § 5540. The most important factor in the court's analysis is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336, 682 A.2d 477, 480 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652, 572 A.2d 1350, 1351 (1990) (mem.).
¶ 11. Father essentially argues that the family court erred in concluding that termination of his residual parental rights was in K.F.'s best interests because the court's conclusion rested on factors that were beyond his control, i.e., SRS's *588 failure to provide him with services and its denial of his request for visitation with K.F. Father does not challenge any of the family court's factual findings as clearly erroneous, however, nor does he argue that the court failed to apply the proper statutory standard. Instead, he asserts that the court erred by "fail[ing] to be mindful" of SRS's substantial responsibility for the circumstances alleged to support termination of his residual rights.
¶ 12. We find father's argument without merit. The family court considered the statutory factors in arriving at its conclusion, and its findings are supported by the evidence. As the family court found, SRS was unable to set up any consistent contact between father and K.F. due to father's frequent incarceration. Father was informed by an SRS caseworker at a case plan meeting that it was essential that he keep in contact with SRS and comply with the law. Although father appeared to understand these requirements, he failed to meet them. Father has demonstrated a pattern of unavailability due to incarceration, criminal behavior, and nonparticipation in Corrections programming. He has not played a constructive role in K.F.'s life, and there is no likelihood that K.F. could be reunited with him in the foreseeable future. Father's rights over another minor child were terminated based on similar considerations. See In re A.C., Docket No. 2003-100, 829 A.2d 800 (2003) (mem.) (3-justice panel) (affirming family court's termination order based on court's findings that father had no relationship with A.C., had not played a constructive role in A.C.'s life, it was unlikely that father would be able to resume his parental duties within a reasonable time, father continued to abuse drugs, had no residence, was not employed, was unable to refrain from illegal conduct leading to imprisonment, had not completed or even engaged in domestic-violence and substance-abuse treatment or parenting education, had failed to stay in contact with SRS, and had not demonstrated an interest in A.C.'s well-being). Father has not demonstrated that the court based its conclusion on factors "beyond his control," and we thus find his reliance on In re S.R., 157 Vt. 417, 421-22, 599 A.2d 364, 367 (1991), misplaced. In this case, father bears sole responsibility for his frequent incarceration, his failure to maintain consistent contact with SRS, and his lack of a bond with K.F. Indeed, we note that father did not formally request visitation with K.F. until two months after SRS filed its termination petition. Shortly after his request was made, father returned to prison, where he remains. As the family court found, father has not been available as a parental resource to K.F. for eleven months, and he continues to be unavailable due to his incarceration. The family court did not abuse its discretion in concluding that termination of father's residual parental rights was in K.F.'s best interests.
Affirmed.