*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-385

MARCH TERM, 2016

| | |
|---|---|
| In re K.F., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Rutland Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 22-2-14 Rdjv |

Trial Judge: Howard A. Kalfus,
     Acting Superior Judge,
     Specially Assigned

In the above-entitled cause, the Clerk will enter:

Mother and father both appeal termination of their parental rights to their son K.F., born in October 2012. On appeal, mother argues that the court erred in evaluating the best-interests factors. Father argues that the court erred in denying his motion to have K.F. placed with his father under a conditional custody order. We affirm.

K.F. came into the custody of the Department for Children and Families (DCF) at eleven months old because father was incarcerated and mother had overdosed on heroin. Mother has a long history of substance abuse. She has gone through residential drug treatment twelve times with little success. Her relapses have led to incarcerations and hospitalizations. One month before the final hearing, she overdosed in a convenience store. She also has a lengthy criminal record and unmet mental-health needs. Her rights to two other children were previously terminated. Father's paternity was not confirmed until nine months after K.F.'s birth. Father has a history of drug abuse and a lengthy criminal record, including ten felonies. He is currently incarcerated for robbery using a knife and his minimum release date is June 2021.

Several of K.F.'s relatives have provided care for him since he came into DCF custody. Two weeks after K.F.'s birth, mother got married, and her new wife's family has provided care to K.F. After a brief stay in a foster home, K.F. was placed with his step-mother's father and his wife. K.F. has also received respite care from his paternal grandfather and his wife.

The parents stipulated K.F. was a child in need of care and supervision (CHINS). The case plan had concurrent goals of reunification and adoption. It required mother to address, among other things, parenting and accountability issues, her mental-health needs, her substance abuse, and her financial and housing instability. In late 2014, K.F. joined his mother at a residential drug-treatment facility, where she was receiving treatment. Paternal grandfather provided respite care. In December 2014, after mother reported using drugs, she was discharged from the facility. K.F. was placed with his step-mother's aunt—where he has since remained—and friction arose between the relatives, each wanting to provide a permanent home for K.F.

In December 2014, DCF moved to terminate parental rights. In May 2015, father moved for a conditional custody order granting custody to his father.

In September 2015, the court held a joint hearing over two days on the termination petition and father's motion. Following the hearing, the court issued a written order granting the State's petition to terminate parental rights and denying father's motion. The court found there was a change of circumstances due to stagnation. The court further found that termination was in the child's best interests. The court found that father has virtually no relationship with K.F. and will not be ready to parent in a reasonable time. As to mother, the court found that mother's lack of contact prevented a beneficial interaction with K.F.: mother did not play a constructive role in K.F.'s life and mother would not be able to parent in a reasonable time given her need to prepare to meet K.F.'s needs, her refusal to attend drug treatment, and the lack of stability in her life. The court denied the conditional-custody motion. It concluded that—although both families loved K.F.—K.F. was well adapted to living with his aunt, where he had been for ten months, and had strong bonds with his community, and it would not be in his best interests to disrupt his attachment and stability. Both parents appeal.

To terminate parental rights, the family court must find by clear and convincing evidence first that there has been a substantial change in material circumstances and second that termination is in the best interests of the child. In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.); In re B.W., 162 Vt. 287, 291 (1994); see 33 V.S.A. § 5114(a) (listing statutory best-interests factors). The court must consider the statutory factors with the most important factor being the likelihood the parent will be able to resume parental duties in a reasonable period of time. In re K.F., 2004 VT 40, ¶ 10. The trial court's findings will be affirmed unless clearly erroneous and its conclusions will be affirmed if supported by the findings. Id.

Mother argues that the court's best-interests analysis was flawed because the court erroneously relied on what mother views as DCF's improper action in prohibiting mother from having contact with K.F. until she was in drug treatment.

The court found the following related to mother's contact with K.F. DCF arranged visitation and family time coaching for mother, but she did not attend consistently, and family time coaching was canceled after she missed several visits. DCF required mother to be engaged in treatment to have visits, and there were no visits after June 2015 due to mother's refusal to engage in treatment. In its decision, the court stated that DCF prohibited mother from visiting with K.F. unless and until she was in drug treatment "[d]ue to the obvious safety risks to her child while her addiction is untreated."

According to mother there was no safety risk posed by her having visits and therefore DCF improperly prevented contact with her son and the court could not use the lack of visits to conclude that she lacked a relationship with her son. Essentially, mother argues that the court's best-interests analysis was made in reliance on a fact—her lack of contact and thus a relationship with her son—that was caused by events outside her control.

We conclude there was no error. Although the court relied on mother's lack of contact with K.F., this lack of contact was a result of mother's own actions.[*] See id. ¶ 12 (concluding that father's lack of visits due to his incarceration was not factor beyond his control). The court found that mother had inconsistent and then nonexistent contact during the period after K.F. was taken

---

[*] We do not reach the question of whether DCF properly conditioned mother's visits on her engagement in treatment insofar as mother did not challenge DCF's action below.

into custody. Mother bears responsibility for her choices to inconsistently attend contact when it was available and to refuse to engage in drug treatment to maintain contact. Regardless of whether visits with mother indeed posed a safety risk, as the court stated, this statement by the court was not a finding or a critical element of the court's best-interests analysis and thus, even if in error, does not require reversal. See In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508 (explaining that in juvenile cases unsupported findings do not require reversal if remainder of findings support decision). The court's best-interests analysis rested on the facts that mother had not engaged in services such as mental-health treatment, parenting education, and substance-abuse treatment, and further that although she had stable employment, she had an unstable living situation. Based on these facts, the court found that mother lacked a relationship with her son and, most importantly, would not be able to parent within a reasonable period of time given her untreated addiction and mental-health needs, her unstable living situation, and her lack of skills to parent. These findings are all supported by the evidence and in turn provide sufficient grounds to terminate mother's rights.

Therefore, we turn to father's appeal regarding the court's denial of his motion to transfer custody to K.F.'s grandfather under a conditional custody order. Father first argues that the court erred by denying his motion without considering proposed findings. At the close of the hearing, the court indicated that it did not require proposed findings, but invited the parties to speak if they desired to file them. No party so requested at that time. The following day father moved for time to file proposed findings. The court denied the motion and issued a decision a week later. Given the need for timely resolution of juvenile cases, the lengthy evidence presented, and the lack of a request at the hearing, the court acted within its discretion in refusing father's request to submit written proposed findings. See In re J.S., 168 Vt. 572, 575 (1998) (mem.) (concluding that trial court did not err in making findings without receiving father's proposed findings where findings were filed after deadline).

Father also contends that the court's findings are inadequate because the court failed to consider what he views as DCF's alleged mismanagement, which led to K.F. being placed with his aunt for such a long period of time prior to termination. There was no error. At disposition, the court is empowered to make one of several orders, including terminating parental rights or transferring custody to a relative. See 33 V.S.A. § 5318(a)(5), (7). The court is guided by the child's best-interests, id. § 5318, which do not include an evaluation of how DCF conducted the case. Id. § 5114(a). The evidence supports the court's findings related to the factors, in particular that K.F. has adjusted well to living in his aunt's home and it is not in his best interests to disrupt the attachment and stability that he has achieved there. These findings in turn support the court's decision to deny the request to transfer custody to K.F.'s paternal grandfather.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice

3