*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-330

JANUARY TERM, 2017

| | |
|---|---|
| In re I.B., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 205-7-12 Cnjv |
| | |
| | Trial Judge: Michael S. Kupersmith (Ret.) |

In the above-entitled cause, the Clerk will enter:

Father appeals the superior court's order terminating his parental rights with respect to his daughter, I.B. We affirm.

The superior court's findings reveal the following facts. I.B. was born in July 2012. Prior to her birth, father and mother had a long history with the Department for Children and Families (DCF) concerning their four older children. Issues of domestic violence and substance abuse resulted in a termination order in 2011 with respect to three of those children, followed by this Court's affirmance of that order. See In re L.B., G.B, & L.B, No. 2011-320, 2012 WL 1293735 (Vt. Mar. 15, 2012) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx. The parent's fourth child, C.B., came into DCF custody in July 2011. The parents voluntarily relinquished their parental rights to C.B. in May 2012.

I.B.'s parents traveled to Plattsburgh, New York for I.B.'s birth in July 2012. That same month, DCF filed a petition, based on the parents' history, alleging that I.B. was a child in need of care or supervision (CHINS), and obtained a pick-up order. I.B. was returned to Vermont from New York and placed with the same foster mother who had adopted I.B.'s older sister, C.B.. When the parents returned from New York, DCF, at mother's request, placed I.B. with mother at the Lund Center. Mother left the Lund Center program after only three days, however, and I.B. was returned to the foster mother. I.B. has remained with the foster mother ever since, except for approximately three months in 2015 when she was reunited with her parents pursuant to a conditional custody order (CCO).

Meanwhile, I.B. was adjudicated CHINS in July 2013, and a disposition order followed. In January 2014, this Court affirmed the superior court's CHINS determination. In re I.B. [I.B. I], No. 2013-351, 2014 WL 3714620 (Vt. Jan. 23, 2014) (unpub. mem.), http://www. vermontjudicary.org/LC/unpublishedeo.aspx.

In June 2014, I.B.'s attorney filed a petition to terminate mother's and father's parental rights. The superior court denied the petition and directed DCF to develop a case plan with a goal of reunification. Pursuant to the plan, which was approved in April 2015, DCF gradually

transitioned I.B. from her foster home to her parents' home. In October 2015, the superior court issued a CCO transferring custody of I.B. from DCF to her parents. The CCO required the parents to meet all of I.B.'s needs, engage with DCF in case planning efforts, allow DCF to make unannounced home visits, maintain frequent contact with the DCF case worker, participate in all court proceedings, participate in counseling with I.B., participate in an early child development program, sign releases so DCF could monitor progress, and maintain a safe, sober, and stable home.

In December 2015, DCF received reports from the neighbors that the parents were drinking and fighting in their home. There were reports of I.B. screaming in pain as if she was being hurt. Following an investigation, DCF sought custody of the child based on concerns for her safety. Following a December 23, 2015 hearing, which was characterized as a temporary care hearing, the superior court transferred custody back to DCF. I.B. was returned to the care of the same foster mother with whom she had lived before the CCO was issued. Father appealed the transfer, and this Court affirmed the superior court's decision. In re I.B. [I.B. II], 2016 VT 70, __ Vt. __, 149 A.3d 160 (2016).

In January 2016, I.B.'s attorney again filed a petition to terminate father and mother's parental rights. DCF joined the petition. The termination hearing was held over three days in June 2016. Mother voluntarily relinquished her parental rights on the second day of the hearing. At the hearing, a child psychologist who had been treating I.B. testified that the child had a profound primary attachment to her foster mother, and that that attachment was severely damaged when the child was placed with her parents pursuant to the CCO, resulting in a negative effect on her emotional health and her psychological development. The psychologist observed that I.B. became more anxious and aggressive when in the care of her parents, but that that behavior stopped after she returned to her foster mother's home. Another psychologist also testified that I.B. had a strong primary attachment to her foster mother and opined that the only feasible means of repairing the damage that had been done to the child would be for her to remain with her foster mother.

The superior court found that during the period I.B. was in the parents' home between October and December 2015, the parents failed to comply with both the letter and spirit of the CCO. Most important, in the court's view, the parents failed to provide I.B. with a safe, sober, and stable home, which she desperately needed. The court found that the parents were frequently intoxicated, fought constantly, exposed I.B. to emotional and physical violence and sometimes made her the object of that violence, and failed to engage in counseling. Regarding father, the court found that he had continuously failed to comply with the case plan since January 2016 by declining to meet with the DCF case worker or the psychologist who had done an updated family assessment and by not submitting requested urine samples except on one occasion. The court further found that father had not taken any steps, at least as far back as October 2015, to improve his parenting skills, and that he had not engaged in counseling, anger management therapy, or substance abuse treatment. Finally, the court found that father had no insight into, or apparent interest in learning about, I.B.'s psychological and emotional condition.

Rejecting father's argument that it must consider whether there had been changed circumstances only from the time of the December 2015 order transferring custody back to DCF, the superior court concluded that there had been a substantial change in material circumstances since the February 2015 order denying the first termination petition. The court found changed circumstances in two respects: (1) the damage to I.B.'s psychological health resulting from the rupture of her attachment to the foster mother when she was transferred to her parents' care pursuant to the CCO; and (2) the stagnation, even deterioration, of father's and mother's parenting

ability. After finding changed circumstances, the court reviewed the statutory factors and concluded that termination of father's parental rights was in I.B.'s best interest. See 33 V.S.A. § 5114(a) (setting forth best interest criteria). The court found that I.B. had a negative relationship with both parents, who constantly engaged in verbal, physical, and emotional abuse in her presence, and who, on at least one occasion, physically abused her. The court also found that father had never played a constructive role in I.B.'s life and that he would be unable to resume his parental duties within a reasonable period of time from the child's perspective because he had ongoing, unaddressed substance abuse and domestic violence problems, and he had no insight into I.B.'s psychological or emotional needs or the effects of his own behavior on her well-being.

On appeal, father argues that because this Court found in I.B. II, 2016 VT 70, ¶ 9, that the superior court's December 2015 order transferring custody back to DCF was a modification of the existing disposition order, the threshold showing of changed circumstances must be measured from the time of that order rather than February 2015 when the first termination petition was denied. According to father, DCF failed to make the required threshold showing of changed circumstances because there was no evidence of substance abuse or domestic violence since I.B. was taken from the parents' home and because the court found that supervised visits since then had gone reasonably well. See In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.) (stating that before considering child's best interest in response to termination petition, trial court "must first find that there has been a substantial change of material circumstances"); In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.) (stating that "substantial change in material circumstances is most often found when a parent's ability to care for a child has either stagnated or deteriorated" (quotations omitted)).

We find no merit to this argument. Although the December 2015 order transferred custody from DCF to the parents and thus modified the custodial aspect of the April 2015 disposition order, the case plan and permanency goal of the April 2015 disposition order remained the same—reunification with the parents. See 33 V.S.A. § 5318(a)-(b) (addressing custody and case plan aspects of disposition order). The second termination order sought modification of the case plan and permanency goal set forth in the April 2015 order. Thus, the court could consider a change of circumstances from that time forward. For the reasons stated by the superior court, there was overwhelming evidence of a change of circumstances during that time period. Moreover, even if the court had been restricted to considering any change of circumstances from December 2015 forward, its findings support its conclusion that there were changed circumstances. As the court found, I.B.'s mental health improved significantly after she was removed from her parents' home, while father continued to avoid virtually all contact with DCF or to engage with service providers

to improve his parenting skills or to gain some insight into I.B.'s needs and the effect of his conduct on her well-being.  In short, father continued not to be in compliance with the case plan.

     Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice