VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-147



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2023

| | |
|---|---|
| In re M.W., M.W., B.W., Juveniles<br>(J.T., Mother\*) | APPEALED FROM:<br><br>Superior Court, Lamoille Unit,<br>Family Division<br>CASE NOS. 42-10-18 Lejv, 43-10-18 Lejv &<br>45-10-18 Lejv<br>Trial Judge: Scot L. Kline |

In the above-entitled cause, the Clerk will enter:

Mother appeals a family court order terminating her parental rights to her children M.W., M.W., and B.W., born in January 2014, June 2015, and September 2016, respectively.[1]  On appeal, mother argues that the evidence does not support the court's finding that mother was unable to resume parental duties in a reasonable time, and that the trial judge had a conflict of interest requiring recusal.  We affirm.

The family court made the following findings.  In October 2018, the family court placed M.W., M.W., and B.W. in the custody of the Department for Children and Families (DCF), based on concerns that the children had persistent head lice, were frequently unsupervised in a busy parking lot, and had unexplained bruising.  The State filed a petition alleging that M.W., M.W., and B.W. were children in need of care or supervision (CHINS) and in December 2018 parents stipulated to the merits.  A disposition order was issued in February 2019 with a goal of reunification with mother or father.  The disposition case plan included the following goals for mother: work with service providers to understand how appropriate supervision can create physical and emotional safety for children, demonstrate an ability to meet the children's needs, and address her mental health and trauma.  There were specific action steps for mother related to each goal.

Mother made progress on the case plan.  She worked with Easter Seals and completed Family Time coaching.  She engaged in parental education and signed releases for DCF.  Mother also maintained sobriety, maintained a safe and clean home, and developed a plan for dealing

___

[1]  Mother has an older child, H.W., who went into mother's care in August 2019 under a conditional custody order and was ultimately returned to mother's custody.  H.W. remained in mother's custody at the time of these termination proceedings.

with head lice. Mother worked on her mental health by engaging in therapy but still was working on a plan for long-term stability. The disposition goal date was extended to allow for a parenting assessment of mother. This assessment made multiple recommendations for how best to support mother. Mother did not disclose any issues related to substance use to the evaluator and consequently this was not addressed in the assessment.

The children were transitioned back to living with mother from February to August 2021 pursuant to the staggered approach recommended in the parenting assessment. In September 2021, the children were all in mother's care under a conditional custody order (CCO). One condition was that mother not allow father contact with the children and father's contact had to be supervised by DCF or a DCF-approved supervisor. DCF became concerned that mother was allowing father contact and in mid-November 2021, DCF made an unannounced visit to the home as authorized by the CCO.[2] Mother was just returning home and refused to allow the DCF workers to go downstairs or elsewhere in the house beyond the kitchen. Although mother testified that father was not living at her house, the court did not credit this testimony. Because of mother's refusal to provide access to the home, the State filed for a change in custody and the court issued an order returning the children to DCF custody.

After the children were returned to DCF custody, there were several instances during mother's visits with the children that concerned the DCF caseworker. Mother had slurred speech, heavy eyes, and was itching herself on one occasion; at another visit mother had slurred speech, red eyes, constricted pupils, and sores and scabs on her face. Mother refused to perform a urinalysis (UA) test. Mother's visits were switched to a neutral setting. Mother's UAs in June, August, November, and December 2022 were positive for fentanyl and other opioids. In December 2022, mother acknowledged that she was actively using substances several times per week.

Since November 2021, the children have lived with foster parents. They all had significant issues at the time of their arrival, including exhibiting violent, aggressive, and sexualized behaviors, and demonstrating a lack of boundaries. They had sleep problems and issues with eating. Since being with the foster family, their behavior has improved. The children have all engaged in therapy. The children had a bond with the foster parents and their needs were being met.

The State filed a petition to terminate parents' rights. Following a hearing, the court found that there was a change in circumstances due to stagnation. The court acknowledged that mother made good progress towards the case-plan goals up to the point of reunification in September 2021. Within a short period of time, however, mother failed to comply with the CCO conditions and since then mother did not meet a number of action steps or expectations. Because of mother's substance use, visits were supervised. Mother did not exhibit an ability to control her anger or manage conflict and during visits mother used language that escalated the children and the children were at times negatively affected by the visits. Mother regressed in her parenting skills, coping skills, and sobriety. This failure was not attributable to DCF and DCF provided appropriate support to mother.

The court further concluded that termination was in the children's best interests. The children have anxiety and stress around visits with mother and are nervous. The children have a

___

[2] Father chose not to engage with DCF and did not meet any action steps or expectations identified in the case plan. He did not appeal termination of his parental rights.

close relationship with foster parents and are well adjusted to their home there. Mother does not play a constructive role in the children's lives. Most importantly, the court found that mother would not be able to resume parenting within a reasonable time as measured by the needs of her young children, whose cases were pending for over four years. Mother appeals.

On appeal, mother first argues that the evidence does not support the court's finding that she was unable to resume parental duties in a reasonable time. When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

Mother argues that the fact that she completed the necessary steps to gain custody of the children in 2021 under a CCO demonstrates that she could do so again if provided an opportunity. The court's finding that mother would not be able to resume parenting within a reasonable time was fully supported by the record in this case and consistent with the legal standard. In assessing this best-interests factor, the court must consider reasonableness from the perspective of the child's needs, "and may take account of the child's young age or special needs." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29. At the time of the final hearing, mother was using substances, had supervised parent-child contact outside the home due to safety concerns, and had regressed in her ability to parent. The children were at times negatively affected by visits. In addition, the children's cases had been pending for over four years, and the children were young and required stability and permanence. These facts all support the court's determination that mother would not be able to resume parenting in a reasonable time.

Mother next contends that the Chief Superior Judge erred in refusing to disqualify the trial judge despite his having a prior employment relationship with a witness in the case. At a pretrial hearing in December 2022, the trial judge indicated that it was the first involvement he had with the case and informed the parties that he had worked with the DCF worker involved in mother's case several years prior when the DCF worker was employed by the Judiciary. The State indicated that it intended to call the DCF worker as a witness. The judge expressed that he did not think there was a conflict but wanted to provide disclosure to the parties. After conferring with her client, mother's counsel indicated that mother was concerned about a potential conflict. Mother subsequently filed an objection and moved to disqualify the judge to avoid any perceived conflict. Mother asserted that the judge may give more credit to the DCF worker's testimony because he knew her personally. The Chief Superior Judge denied the motion, concluding that there was no basis to question the judge's impartiality because there was no special or close relationship.

"Judges are accorded a presumption of honesty and integrity, with the burden on the moving party to show otherwise in the circumstances of the case." Ainsworth v. Chandler, 2014 VT 107, ¶ 15, 197 Vt. 541 (quotation and alteration omitted). Pursuant to the Code of Judicial Conduct, disqualification is appropriate when "the judge's impartiality might reasonably questioned." Vt. Code of Judicial Conduct Rule 2.11(A). A motion to disqualify is referred to the Chief Superior Judge. See V.R.C.P. 40(e). This Court reviews the decision for an abuse of discretion. Velardo v. Ovitt, 2007 VT 69, ¶ 13, 182 Vt. 180.

As the Chief Superior Judge recognized, judges are not automatically disqualified when "friends or associates of a judge appear as witnesses." State v. Putnam, 164 Vt. 558, 562 (1996). The test for disqualification is whether there exists an appearance of impropriety in the mind of a reasonable, disinterested observer. See United States v. Murphy, 768 F.2d 1518, 1538 (7th Cir. 1985) (explaining that test for appearance of partiality was "whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case" (quotation omitted)). Here, the trial judge's relationship with the DCF worker stemmed from their professional contact several years prior, there was no ongoing relationship between the trial judge and the witness, and no other type of close relationship that would cause a reasonable, objective observer to question the judge's impartiality. Therefore, the Chief Superior Judge did not abuse his discretion in denying the motion to disqualify the trial judge.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice

4