VERMONT SUPREME COURT

109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     24-AP-096

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2024

In re T.D., Juvenile
(C.D., Father*)

} 
} 
} 
} 
} 

APPEALED FROM:

Superior Court, Bennington Unit,
Family Division
CASE NO. 23-JV-00434
Trial Judge: Howard A. Kalfus

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights to minor daughter T.D.  We affirm.

T.D. was born in December 2022.  At the time T.D. was born, the Department for Children and Families (DCF) had an open family case concerning her older brother C.D.  In March 2023, the State filed a petition alleging that T.D. was a child in need of care or supervision (CHINS) due to concerns about mother's mental health and substance abuse as well as allegations of physical and emotional abuse of mother by father.  In April 2023, mother stipulated that T.D. was CHINS on the ground that mother's "uncontrolled mental health issues at the time of the petition were preventing her from meeting [T.D.'s] needs at that time."

In June 2023, the court issued a disposition order with a goal of reunification with either parent by September 2023.  The case plan approved by the court called for father to engage in mental-health and substance-abuse treatment, provide a safe living environment where drugs were not present, maintain sobriety, engage in Family Time Coaching and the Caring Dads program, complete a parenting class, participate in monthly visits with T.D. while incarcerated, and complete a domestic-violence program, among other action steps.

The State moved to terminate the parental rights of both parents in August 2023.  A hearing was held over two days in February and March 2024.  Mother voluntarily relinquished her parental rights on the first day of the hearing.  At the conclusion of the hearing, the court made the following oral findings.

T.D. spent the first six weeks of her life in the hospital.  Father was incarcerated for the first month of T.D.'s life.  After he was released from incarceration, father provided some parental care for T.D., including changing diapers, feeding her, and putting her to sleep.  The court found that "[w]hen [father] is out, he has the skills necessary to care for [T.D]."

In April 2023, father was reincarcerated. He was released in September 2023 to attend a residential treatment program. After completing a two-week program, he returned to Bennington. He was reincarcerated again in October 2023. His earliest possible release date is in October 2025, when he would become eligible for furlough.

While in prison, father used the GettingOut application to have virtual contact with T.D. Father had "only a handful" of visits with T.D., in part due to delays in getting the device needed to operate the application after he was transferred between correctional facilities.

The court found that father's reincarceration constituted a change in circumstances sufficient to justify modification of the existing disposition order. It then assessed the best-interests factors set forth in 33 V.S.A. § 5114(a). It found that T.D. was closely bonded to her foster parents. She and father had a loving relationship but her interaction with father was significantly limited due to his incarceration. The court found that T.D. was well-adjusted to her foster home and community, where she had lived for most of her life. It found that T.D. needed permanency and that father would not be able to resume parental duties within a reasonable time. Finally, it found that father did not play "a particularly constructive role" in T.D.'s life. It therefore concluded that termination of father's parental rights was in T.D.'s best interests. Father appealed the order to this Court.

On appeal, father argues that the court erred in determining that he would not be able to resume parental duties within a reasonable time. He argues that given T.D.'s relatively young age and the court's finding that he had the skills necessary to care for her when not incarcerated, it would have been in her best interests to simply extend the case plan and preserve the family unit.

When faced with a petition to terminate parental rights after initial disposition, the family division must first determine whether there exists a change in circumstances sufficient to justify modifying the existing disposition order. In re B.W., 162 Vt. 287, 291 (1994); 33 V.S.A. § 5113(b). Although father does not challenge it, we note that the court's finding that father's reincarceration constituted a change in circumstances was incorrect because father was incarcerated at the time of the original disposition order. This error does not require reversal, however, because the record amply supports a finding of changed circumstances for other reasons. In re H.A., 153 Vt. 504, 515 (1990) (explaining that "the changed circumstances test is met when the findings in the case are replete with facts sufficient to meet the required standard" (quotation omitted)). Since disposition, mother voluntarily relinquished her parental rights. See In re K.F., 2004 VT 40, ¶ 9, 176 Vt. 636 (mem.) (concluding record showed changed circumstances where mother, who was sole parent with whom reunification had been contemplated, voluntarily relinquished her residual parental rights). Moreover, father did not appear to have made significant progress toward any of the case-plan goals. There was no evidence that he completed any of the programming recommended by the case plan, and his visitation with T.D. had been limited to brief virtual visits. These facts are sufficient to demonstrate a change in circumstances sufficient to justify modifying the original disposition order. Id.; see also In re B.W., 162 Vt. at 291 (explaining that change in circumstances is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time" (quotation omitted)).

If the court finds a change in circumstances, it must then consider whether termination is in the child's best interests using the factors set forth in 33 V.S.A. § 5114(a). "The most important factor for the court to consider is the likelihood that the parent will be able to resume

parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998) (mem.). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450 (quotation omitted).

The record supports the family division's conclusion that father will not be able to resume parental duties within a reasonable time. Father has been incarcerated for most of T.D.'s life. As a result, his contact with T.D. has been infrequent and brief. He will continue to be incarcerated until at least October 2025 and will therefore be unavailable to provide day-to-day care or meet T.D.'s material and developmental needs for a significant period of time. Father bears sole responsibility for his criminal behavior and his resulting inability to care for T.D. In re D.S., 2014 VT 38, ¶ 26, 196 Vt. 325. The evidence supports the court's assessment of this factor, which in turn supports its conclusion that termination was in T.D.'s best interests. See In re K.F., 2004 VT 40, ¶ 12 (affirming termination of father's parental rights where father had been incarcerated for eleven months and continued to be unavailable as parent due to incarceration).

Father's claim that the court should have fashioned an alternative remedy to termination to preserve the family unit is without merit. "We have repeatedly rejected the claim . . . that the court must consider less drastic alternatives to termination once it has determined the parent to be unfit and unable to resume his or her parental responsibilities." In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593 (mem.). We therefore see no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Nancy J. Waples, Associate Justice