VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-189



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2024

In re K.M., Juvenile      } APPEALED FROM:
(B.M., Father\* & I.K., Mother\*)   }
            } Superior Court, Chittenden Unit,
            } Family Division
            } CASE NO. 21-JV-01781
             Trial Judge: John L. Pacht

In the above-entitled cause, the Clerk will enter:

Mother and father appeal the trial court's decision terminating their parental rights to K.M., born in August 2021.  On appeal, father contends that his stagnation and inability to parent were caused by factors outside his control.  Mother argues that an alternative disposition to termination was in K.M.'s best interests and the trial court relied on impermissible hearsay.  We affirm.

The court made the following findings.  Shortly after K.M.'s birth, the Department for Children and Families (DCF) opened a case based on prior involvement with the family that resulted in relinquishment of parents' rights to K.M.'s older sibling a few months earlier.  There were concerns regarding the habitability and safety of the home.  DCF attempted to work with parents on parenting skills and mother's mental health.  The State filed a petition in December 2021, alleging K.M. was a child in need of care or supervision (CHINS).  K.M. initially stayed with parents under conditions.  In April 2022, DCF sought and obtained custody of K.M.  In July 2022, parents were evicted and separated.

In September 2022, the court found that K.M. was CHINS.  The resulting disposition plan had a goal of reunification with parents.  The plan noted that if parents did not make substantial progress in the first three months of the disposition plan, DCF would begin concurrent planning to ensure timely permanency for K.M.  The action steps for parents included completing a mental-health assessment and following recommendations, engaging in counseling to address past trauma, maintaining safe and stable housing, participating in structured parent education, and staying in touch with DCF.  Father did not engage in the case plan and did not visit K.M. after August 2022.  Mother had a few visits with K.M. in January 2023, but by March 2023 parents were not engaging in services and had lost contact with DCF.  In spring of 2023, mother told the DCF worker that she felt comfortable with the foster parents and no longer sought custody of K.M.

K.M. was placed with a foster family in August 2022 where he has remained. He developed a strong bond with his foster parents. Although K.M. was quite obese when he first came into custody, K.M.'s foster parents were able to bring his weight within the normal range. He began eating healthy foods, attended preschool, and made friends.

In March 2023, DCF filed a petition to terminate parents' rights. The court held hearings in July 2023 and May 2024. Mother did not attend the termination proceedings and father attended sporadically. The court made oral findings on the record. The court found that there was a change in circumstances due to parents' stagnation. Parents essentially had no contact with K.M. for years before the final hearing. Parents did not develop their parenting skills or obtain any assessments to address their mental health and past trauma. The court further determined that termination was in K.M.'s best interests. Parents had no relationship with K.M. Conversely, K.M. had a strong bond with his foster parents and members of their extended family. K.M. was well adjusted to his foster home and preschool. There was no likelihood either parent would be able to resume parenting duties in a reasonable time. Parents did not express interest in resuming duties. Moreover, given K.M.'s young age and time in custody, he needed permanence. Finally, parents did not play a constructive role in K.M.'s life. Mother and father separately appeal.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory best-interests factors. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639, (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, father argues that the trial court's determinations regarding a change of circumstances and K.M.'s best interests were flawed because his stagnation and his inability to parent in a reasonable time were both caused by factors outside of his control. Father asserts that DCF did not make reasonable efforts to facilitate visits between father and K.M. during times when father was not working, and this was the cause of his lack of progress towards reunification.

Father has not demonstrated that his lack of visits with K.M. was caused by factors outside his control. The record indicates that after K.M. was found CHINS, father was working full time and had difficulty scheduling visits with K.M. during DCF hours. The court encouraged father to work with DCF to find a solution and indicated father could file a motion with the court if needed. In November 2022, father emailed the court requesting a new attorney and asserting he had not seen his son because he needed to work. The court scheduled a hearing, but father did not appear, and the court denied the motion for a new attorney. No motion was filed regarding visits. Moreover, DCF referred father to a visitation program at Lund, but father did not follow through with the referral. Therefore, father's lack of visits was not caused by factors outside his control.

Moreover, other unchallenged evidence supports the court's findings that father's stagnation and inability to parent K.M. were both caused by factors within father's control. Father made no progress on the goals identified in the case plan. Father did not develop parenting skills and failed to engage in any of the assessments required by the disposition plan.

Father and K.M. had no relationship by the time of the final hearing. Father made no effort to follow through on scheduling visits with K.M. at alternate times. As to K.M.'s best interests, father exhibited a total lack of engagement and there was no likelihood that he could parent K.M. within a reasonable time, especially given K.M.'s young age, time in custody, and need for permanence. See In re B.M., 165 Vt. 331, 337 (1996) (explaining that reasonableness of time period must be measured from child's perspective).

Therefore, we turn to mother's appeal. Mother first argues that it was not in K.M.'s best interest to sever the familial relationship with mother. Mother contends that K.M. was in a stable environment and that there were "no pressing safety concerns that required the court to terminate mother's parental rights." Mother's assertion that there was no "pressing" need to terminate parental rights is at odds with the controlling statutory scheme, which prioritizes obtaining "safety and timely permanency for children." 33 V.S.A. § 5101(a)(4). To achieve this permanency, the State moved to terminate mother's parental rights when there was no progress towards reunification. When the State files a petition to terminate parental rights, the trial court is not required to consider alternative dispositions. In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593 (mem.). As we explained in In re S.B., 174 Vt. 427, 428 (2002) (mem.), a termination proceeding "is not a custody case" in which the family court must balance the respective advantages of different placement options, but rather "a legislatively created . . . proceeding in which the court is required to weigh specified statutory factors when determining whether to grant a petition for termination of residual parental rights."

The family court duly weighed the best-interests factors here and determined by clear and convincing evidence the balance of factors compelled termination of mother's parental rights. Most importantly, the court found no likelihood that mother could resume parenting K.M. within a reasonable time given her lack of progress, lack of interest in parenting K.M., and lack of relationship with him. See In re M.M., 159 Vt. 517, 523 (1993) (stating that most important statutory factor is likelihood of parent resuming parental duties within reasonable time).

Mother also contends that the trial court relied on impermissible hearsay to reach its decision. Courts may admit hearsay in termination proceedings but cannot rely solely on hearsay as the basis for the termination. In re A.F., 160 Vt 175, 181 (1993); see 33 V.S.A. § 5317(b) (allowing admission of hearsay). Mother argues that the State substantially relied on the testimony of a DCF case worker who testified concerning the reports and notes of other individuals and the trial court failed to make findings regarding the reliability of this hearsay.

Mother fails to demonstrate where she objected to introduction of hearsay in the termination proceeding and therefore has not preserved this argument for appeal. In re R.L., 148 Vt. 223, 228 (1987) (declining to address parents' claim that trial court improperly relied on hearsay at disposition where parents did not object to introduction of testimony). Mother has also not identified which evidence was objectionable and how it impacted the court's termination decision.

Moreover, the record shows that there was direct evidence to support the court's findings. The DCF caseworker testified that although he had a new position at DCF, he continued to be K.M.'s caseworker and he provided personal knowledge concerning mother's lack of involvement in the case. He testified that in July 2023 mother told him to leave her alone and not to contact her again. The caseworker further stated that after mother contacted him in January 2024, she indicated that she did not wish to engage in the case again, and that she had not engaged in any of the planned services. He testified regarding his visits to observe K.M.

with his foster family.  Therefore, there was ample direct evidence in the record to support the court's findings that mother's progress had stagnated, and that termination was in K.M.'s best interests.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice