VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-345

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MARCH TERM,   2025

| | |
|---|---|
| In re A.C. & J.C., Juveniles<br>(A.C., Mother\*) | APPEALED FROM:<br><br>Superior Court, Chittenden Unit,<br>Family Division<br>CASE NOS. 21-JV-00814 & 21-JV-00815<br>Trial Judge: Kevin W. Griffin |

In the above-entitled cause, the Clerk will enter:

Mother appeals the court's order terminating her parental rights to her children A.C. and J.C., born in September 2019 and May 2014, respectively.  On appeal, mother argues that the evidence does not support the court's determination that termination is in the children's best interests.  We affirm.

The court found the following.  Mother was born with a congenital defect that required amputation of her lower legs at nine months old.  J.C. has the same defect and portions of his lower legs were amputated at eighteen months old.  Both mother and J.C. use prosthetic legs.  Mother's condition caused medical complications, and she was prescribed narcotic medication for pain management at fourteen years old.  Mother developed a substance-abuse disorder.  She gave birth to H.C. and M.C. in 2006 and 2008 and due to mother's struggles with substance abuse and her inability to provide a safe environment, maternal grandparents were granted a permanent guardianship of the children in 2015.  When J.C. was born, mother was abusing substances and J.C.'s father subjected mother to verbal and physical abuse.  In 2014 and again 2018, the State petitioned to have J.C. declared a child in need of care or supervision (CHINS), and in each instance the court granted the Department for Children and Families (DCF) custody for a period of time.  After engaging with DCF and receiving services, mother regained custody of J.C.  A.C. was born in September 2019.[1]

In June 2021, the State filed petitions alleging A.C. and J.C. were CHINS due to unmet medical needs for J.C., parents' substance abuse, inadequate supervision, ongoing domestic violence, and lack of safe, suitable, and stable housing.  In November 2021, mother stipulated that the children were CHINS.  The family division adopted the proposed reunification plan,

---

[1]  J.C. and A.C. have different fathers.  The State sought termination of the fathers' parental rights, and the parties stipulated to hear those petitions separately.

which, among other things required mother to address her substance-use history by maintaining sobriety, maintain safe and sanitary housing, engage with the children's providers, and work with domestic-violence specialists. The case plan had a goal of reunification by June 2022.

When the children entered custody, they were placed with their maternal grandparents. J.C. was most impacted by his parents' dysfunctional behavior, and this was the third time he was removed from mother's care. He had delayed reading skills and occasionally acted out at school. After being placed with grandparents, he received counseling services. He was angry at mother for choosing drugs over him. A.C. lived most of her life in grandparents' care and was doing well. Grandparents indicated that they could not provide a permanent home for A.C. and J.C. but would continue to provide care until a permanent placement could be found.

In December 2022, the State moved to terminate mother's parental rights due to lack of progress towards reunification. Around the same time, A.C.'s father was arrested and taken into custody in New Hampshire. Mother continued to use illicit substances from June 2021 through January 2023 and her contact with the children was minimal and inconsistent. Mother lived in various domestic-violence shelters from December 2022 through the summer of 2023. In September 2023, mother entered a program at Lund to receive services to address substance-abuse and mental-health issues, and to receive parenting support and education. As a program requirement, A.C. was placed with mother just over half of the time. J.C. was too old to reside with mother under program rules. When A.C. was with mother, mother was expected to meet A.C.'s needs, manage A.C.'s behavior, ensure A.C. attended childcare, and attend to her own programming. In January 2024, mother was unsuccessfully discharged from Lund due to her lack of engagement, lack of progress with parent education, inability to set limits on A.C.'s behavior, and repeated violations of the program's rules, including unauthorized absences from the facility and using cannabis in her room.

Following a hearing, the court found that there was a change of circumstances due to stagnation. Mother failed to meet the goals of the case plan. She continued to struggle with substance abuse for more than a year, her contact with the children was inconsistent, and she did not address her parenting capacity. As to the children's best interests, the court found the following. The children spent most of their lives in their grandparents' care and were connected to their home and community. Although grandparents are not a permanent option for the children, they will play a significant role in the children's lives. Mother has been absent for significant periods and has not maintained consistent contact with the children or engaged with medical, dental, or educational providers. Mother was not able to parent within a reasonable time. Mother did not play a constructive role in the children's lives. The court concluded that termination was in the children's best interests. Mother appeals.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, mother argues that the evidence does not support the court's determination that termination is in the children's best interests. Mother argues that the court failed to consider

the fact that there is no viable permanent placement for either child since grandparents have declined and the respective fathers are not prepared to parent. Mother contends that she is doing well with her sobriety and working on establishing housing. Therefore, mother asserts that the evidence demonstrates that she will be able to resume parenting within a reasonable time.

"We have repeatedly held that termination of a parent's rights does not depend on the availability of a permanent placement option for the child." In re R.B., 2015 VT 100, ¶ 19, 200 Vt. 45. In assessing the children's best interests, the trial court "is required to weigh specified statutory factors" and "[t]here is nothing in the statutory best-interests criteria that requires (or precludes) consideration of the particular permanency plan contemplated for the child." Id. ¶ 20 (quotation omitted). Here, the trial court properly weighed the statutory factors, considering mother's record of engagement and progress, the children's long period in custody and need for permanency, as well as grandparents' indication that they could not provide a permanent home. See 33 V.S.A. § 5114(a) (listing factors). The court found that maternal grandparents provided the children with a loving, structured, and supportive home while mother was mostly absent from the children's lives. The children were well integrated in their current school and community. Mother did not engage with J.C.'s education plan or J.C.'s counselor and had never provided the children with a stable home. Most importantly, mother was not any closer to being able to parent the children than when they were removed from her care in June 2021, and therefore not able to resume parenting within a reasonable time. Although mother made progress on her substance-use disorder, mother lacked stable housing, had minimal insight into how her drug use impacted the children, failed to complete parent education, lacked insight into how domestic violence impacted the children, and failed to meaningfully engage with the children's dental, medical, or educational providers. The court's decision is supported and there are no grounds to reverse it.

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice

3