VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-371

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2026

In re M.D. and M.D., Juveniles     }    APPEALED FROM:
(O.L., Mother\* and A.D, Father\*)      }
      }    Superior Court, Franklin Unit;
      }    Family Division
      }    CASE NOS. 23-JV-01326 & 23-JV-01327
      }    Trial Judge: Howard A. Kalfus

In the above-entitled cause, the Clerk will enter:

Mother and father appeal termination of their parental rights to Mi.D. and Ma.D., born in December 2016 and December 2017, respectively.  Father argues that the evidence does not support the court's assessment of the children's best interests.  Mother argues that the evidence did not support the court's determination that there was a change of circumstances due to stagnation.  We affirm.

In October 2023, the State filed a petition alleging that Mi.D. and Ma.D. were children in need of care or supervision (CHINS).  The petition alleged that father had physically abused the children and refused to work with the Department for Children and Families (DCF) to engage in safety planning.  The petition explained DCF's prior involvement with the family.  In 2018, mother was charged with domestic assault in front of the children.  The children were in DCF custody for several months and then in father's care under a conditional custody order.  In 2021, full custody was returned to father.  The CHINS petition averred that since the children were returned to father's care, DCF continued to receive reports regarding physical abuse by father and the condition of the home.  Father refused DCF's request to engage in safety planning. Father was substantiated for hitting the children with a belt and spanking them.  The court issued an emergency care order and placed them in DCF custody.  The children were placed in separate foster homes.  Mi.D.'s behavior improved in his foster home and he was engaged with school and counseling.  Ma.D. made improvements with his physical challenges and made great strides academically.  Both children were engaged in activities.

In July 2024, father stipulated that Mi.D. and Ma.D. were CHINS, agreeing that he used physical discipline with the children resulting in bruising and was not agreeable to DCF safety planning. The resulting disposition order contained a permanency goal of reunification with either mother or father by February 2025. The case plan included action steps for both parents. Among other things, mother was required to attend the children's school meetings, complete parent education, engage in mental-health counseling around anger management, sign releases for service providers, work with the children's mental-health providers and follow recommendations, and demonstrate an understanding of the children's needs. Father was required to take responsibility for the reasons the boys were removed from his care, participate in a parenting-skills program, work with the boys' mental-health providers to repair his relationship with them, provide a safe home free from physical discipline, follow DCF's expectations around visiting the boys, and sign releases to permit DCF to access his providers.

In April 2025, the State filed petitions to terminate both parents' rights. Following a hearing, the court found the following by clear and convincing evidence. There was a change of circumstances due to stagnation. Although mother made some progress, she had not advanced to in-person visits with either child. She had video visits with Mi.D. and had not progressed beyond sending letters and holiday gifts to Ma.D. She failed to maintain releases for DCF to speak to service providers, so DCF was unable to confirm mother's mental-health diagnoses or monitor her progress. She had not attended medical or dental appointments for either child. Overall, mother made insufficient progress towards addressing the issues necessary for reunification. The court also found father's progress had stagnated. Father had not completed any action step other than maintaining stable housing. He retracted the acceptance of responsibility he made at merits and instead blamed others, including the school and the children, for the children going into DCF custody. Father had no contact with the children for the two years the case was pending and did not attend school meetings or medical appointments. Father and his new wife had a daughter and were coparenting her.

The court further found that termination was in the children's best interests. The children had minimal contact with mother and no contact with father for two years. They had loving, healthy relationships with their foster families and adapted to their new communities, finding activities and friends. There was no likelihood that father would be able to resume parenting in a reasonable time given his lack of contact and action on the case plan. Mother's progress over two years towards addressing her mental health and domestic violence was minimal and it was not likely she would be able to parent in a reasonable time. Finally, mother played a minimally constructive role in one child's life and father did not have any constructive role given his voluntary absence from the children's lives. Both parents appeal.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.).

On appeal, father argues that the evidence does not support the court's assessment of the children's best interests. Father does not challenge any particular finding as unsupported; rather

2

he contends that he has demonstrated an ability to successfully parent because since the boys were taken into custody father and his new wife had a child who is doing well. Father emphasizes that he has maintained stable housing and provided for his family, and that he previously parented the children for several years. On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

Here, the record amply supports family court's assessment that termination of father's parental rights was in the children's best interests. The court properly looked at the statutory factors, the most important being whether father would be able to resume parenting duties within a reasonable time. Id. The court found that father had no contact with the children for two years while the case was pending and had played no role in the children's lives during this time. Father also failed to take responsibility for the situation that caused the children to come into DCF custody.

The fact that father was parenting a different child was not determinative. The issue for the court was not whether father was generally capable of parenting but whether termination of his rights to Ma.D. and Mi.D. was in their best interests. See In re D.C., 2012 VT 108, ¶ 22, 193 Vt. 101 (explaining that best-interests criteria "do not attempt to determine whether a parent is a 'good' person or is generally fit to parent any child; rather, the critical question in a termination proceeding is whether the parent is fit, or will be fit within a reasonable period of time, to parent the particular child who is the subject of the termination proceeding"). Given father's lack of contact and failure to take any steps towards reunification, the court's decision that father would not be able to resume parenting within a reasonable period of time was well within its discretion in this case.

Mother argues that the court erred in finding that there was a change of circumstances based on stagnation, and that there was no lawful basis to terminate her parental rights. She claims that her gradual increase of contact with the children was done with an understanding of her children's needs and that she was on track to resume parenting. She argues that the children's need for more time to progress to in-person visits was a matter beyond her control. See In re D.S., 2016 VT 130, ¶ 7, 204 Vt. 44 (explaining that stagnation based on factors beyond parents' control cannot support termination).

The record supports the court's determination both that mother's progress stagnated and that her rights should be terminated. Under the case plan, mother's action steps included attending the children's school meetings, completing parent education, engaging in mental-health counseling around anger management, signing releases for service providers, working with the children's mental-health providers and following recommendations, and demonstrating an understanding of the children's needs. The releases were important for DCF to monitor mother's progress and make decisions regarding contact with the children. The court credited mother with making some progress by recently participating in some shared parenting and school meetings. However, the court found that mother had not maintained releases for DCF so DCF could not assess the appropriateness of increasing contact with the children. This was a matter fully within mother's control. Moreover, mother did not attend the children's medical or dental appointments during the two years they were in custody.

The court acted well within its discretion in determining that mother's minimal progress was insufficient given the expectation in the case plan that the children would reunify by February 2025. Mother essentially asks us to reweigh the statutory factors. "We leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence." In re A.F., 160 Vt. 175, 178 (1993).

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Michael P. Drescher, Associate Justice

4